IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEKSANDR J. STOYANOV,

        Plaintiff *pro se*,

v.

DONALD C. WINTER,
SECRETARY OF THE NAVY, *et al.,*

        Defendants.

\*    \*    \*    \*    \*    \*

Civil Action No.: RDB 05-1567

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

YURI J. STOYANOV,

        Plaintiff *pro se*,

v.

DONALD C. WINTER,[1]
SECRETARY OF THE NAVY, *et al.,*

        Defendants.

Civil Action No.: RDB 05-1611

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

These actions arise out of complaints that Aleksandr J. Stoyanov and Yuri J. Stoyanov

("Plaintiffs") filed against Donald C. Winter, Secretary of the Navy, Gary M. Jebsen, James H.

King, John C. Davies, Stephen M. Farley, and David Caron (collectively, "Defendants").  The

Complaints allege that, *inter alia*, Defendants discriminated against Plaintiffs because of their

national origin and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

---

[1]    These actions were filed against former Secretary of the Navy Gordon R.
England.  On January 3, 2006, Donald C. Winter became Secretary of the Navy.  Pursuant to
Fed. R. Civ. P. 25(d)(1), Secretary Winter is automatically substituted for Secretary England.

2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").  The Complaints also allege that Defendants retaliated against Plaintiffs for complaining about discrimination.  Pending before this Court are four motions: Defendants' Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the Alternative, for Summary Judgment pursuant to Rule 56, and Defendants' Motions to Strike Plaintiffs' Sur-Replies.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment are GRANTED-IN-PART and DENIED-IN-PART, and Defendants' Motions to Strike are GRANTED.  As a result, these actions will proceed with respect to a subset of Plaintiffs' discrimination claims based on national origin, age, and retaliation.

<u>BACKGROUND</u>

**I.    Factual Background.**

Plaintiffs are twin brothers who were born in Russia on April 7, 1955.  In 1984, Plaintiffs became United States citizens.  In 1989, Plaintiff Aleksandr J. Stoyanov ("A. Stoyanov") began working as a scientist at the Department of the Navy's Naval Surface Warfare Center, Carderock Division ("NSWCCD") in West Bethesda, Maryland.[2]  In 1987, Plaintiff Yuri J. Stoyanov ("Y. Stoyanov") began working as a scientist at NSWCCD.  A. Stoyanov's employment was terminated on or about November 18, 2003.  (A. Compl. ¶ 6.)  At all times relevant to his claims, Y. Stoyanov worked at NSWCCD.  (Y. Compl. ¶ 6.)

---

[2]     NCWCCD is "a Navy Working Capitol Funded Organization, meaning that it receives its working funds from the work it performs for its sponsors (either the government or private industry)."  (Defs' Mem. (05-1611) p. 2 n.2.)

During their employment, Plaintiffs were supervised by Stephen M. Farley ("Farley"),

Branch Head of the Radio Frequency Technology Branch, James H. King ("King"), Head of the

Electromagnetic Signature Technology Department, John C. Davies ("Davies"), Deputy Head of

the Electromagnetic Signature Technology Department, and Gary M. Jebsen ("Jebsen"), acting

Head of the Signature Directorate.  (*See* A. Compl. ¶¶ 10-13; Y. Compl. ¶¶ 10-13.)  Plaintiffs

named each of these individuals, as well as David Caron ("Caron"), Assistant Counsel to

NSWCCD, as Defendants in these matters.  (*Id*.)

Plaintiffs allege that "[a]t all relevant times [they] received favorable performance

evaluations and performed [their] job in a superb manner receiving performance and service

awards for outstanding service and exemplary performance."  (A. Compl. ¶ 28; Y. Compl. ¶ 27.)

Plaintiffs also contend, however, that they were reassigned, passed over for promotion, required

to work undesirable schedules, assigned menial tasks inconsistent with their assigned duties, and

threatened with discipline.  (*See*, *e.g.*, A. Compl. ¶¶ 29-95; Y. Compl. ¶¶ 28-98.)  Where relevant

to Plaintiffs' causes of action, the facts alleged in the Complaints are discussed below.  *See*

DISCUSSION *infra*.

## II.    Procedural History.

On February 4, 2002, Plaintiffs sought Equal Employment Opportunity counseling.[3]  On

or about March 19, 2002, they filed Formal Complaints of Discrimination against the Navy.[4]  An

investigation was commenced, discovery was conducted, and eventually dispositive motions

_____

[3]      (Defs' Mem. (05-1611 & 05-1567) Ex. 1 at Exs. B-1 & B-2; *see also* A. Compl. ¶
58; Y. Compl. ¶¶ 16 & 59.)

[4]      (Defs' Mem. (05-1611 & 05-1567) Ex. 1 at Ex. A-1; *see also* A. Compl. ¶ 60; Y.
Compl. ¶ 60 (suggesting that Y. Stoyanov filed his Formal Complaint on March 14, 2002).)

were filed.[5]  On June 19, 2003, Administrative Judge David Norken issued a preliminary bench

decision rejecting most of Plaintiffs' claims.[6]  A hearing was conducted with respect to

Plaintiffs' surviving claims.  With respect to Y. Stoyanov's claims, Judge Norken issued an

Order Entering Judgment in August 2003 that rejected all of Y. Stoyanov's claims.  (*See* Defs'

Mem. (05-1611) Ex. 7.).  With respect to A. Stoyanov's claims, Judge Norken issued a final

decision in August 2003 that incorporated the conclusions of his June 19 bench decision.  (*See*

A. Compl. Attach. 1.)  He found discrimination with respect to only one of A. Stoyanov's

claims—*i.e.*, that on May 20, 2002, the Agency cancelled the purchase of a personal computer

for A. Stoyanov in retaliation for participation in protected activity.  (*Id.*)  In September 2003,

after a subsequent hearing on compensatory damages, Judge Norken issued an Order Entering

Judgment providing that:

> [J]udgment in the above-captioned matter is hereby entered in favor
> of the [A. Stoyanov] with respect to his claim of discrimination on
> the basis of reprisal for prior EEO activity when the Agency, on May
> 20, 2002, cancelled purchase of a personal computer which [A.
> Stoyanov's] supervisor had promised him. . . . [J]udgment is
> otherwise entered in favor of the Department of the Navy with
> respect to all other claims and issues in this case.

(*Id.*)  Plaintiffs noted an appeal to the Equal Employment Opportunity Commission's Office of

Federal Operations ("EEOC-OFO").  On March 29, 2005, the EEOC-OFO affirmed Judge

---

[5]     Defendants indicate that discovery and motions practice were extensive.  (*See*
Defs' Mem. p. 11 ("During the discovery period, approximately twelve depositions were
completed and approximately 50 motions were filed.").)

[6]     (*Compare* Defs' Mem. p. 11 (indicating that Judge Norken rejected all but one of
A. Stoyanov's claims) *with* A. Opp. p. 11 n.4 and Ex. 3, p. 4 (indicating that Judge Norken
rejected all but four of A. Stoyanov's claims) *and* A. Compl. Attach. 1 p. 3 (same).)

Norken's final orders.[7]  (*See* A. Compl. Attach. 1.)

On June 10, 2005, A. Stoyanov filed a Complaint in this Court that was assigned Civil Action No. 05-1567.  On November 12, 2005, Defendants filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the Alternative, for Summary Judgment pursuant to Rule 56.  (Paper No. 23.)  On January 13, 2006, Defendants filed a Motion to Strike Plaintiff's Sur-Reply.  (Paper No. 32.)

On June 14, 2005, Y. Stoyanov filed a Complaint in this Court that was assigned Civil Action No. 05-1611.  On October 12, 2005, Defendants filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the Alternative, for Summary Judgment pursuant to Rule 56.  (Paper No. 19.)  On January 13, 2006, Defendants filed a Motion to Strike Plaintiff's Sur-Reply.  (Paper No. 28.)  Discovery has not commenced in either matter.[8]

<u>STANDARD OF REVIEW</u>

I.      **Motions to Dismiss.**

A.      **Fed. R. Civ. P. 12(b)(1).**

The plaintiff has the burden of proving that subject matter jurisdiction exists.  *See*

---

[7]      The EEOC-OFO ordered the Navy to pay A. Stoyanov $1,000 in non-pecuniary compensatory damages, provide A. Stoyanov with a personal computer, and "take corrective, curative, and preventive actions to ensure that violations of Title VII and the ADEA will not recur, including, but not limited to, providing four (4) hours of training, with special emphasis on retaliation, to the agency officials involved in the above mentioned complaint."  (Compl. Attach. 1 p. 8.)

[8]      Plaintiffs have initiated separate actions against Defendants for a variety of discrimination claims.  *See* Civil Action Nos. RDB 05-2819, RDB 06-1245, and RDB 06-1244. Some of these actions may ultimately be consolidated and others stayed pending the resolution of Civil Action Nos. RDB 05-1567 and 05-1611.

*Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district

court is to regard the pleadings as mere evidence on the issue, and may consider evidence

outside the pleadings without converting the proceeding to one for summary judgment." *Id*.  The

district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional

facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*.

**B.       Fed. R. Civ. P. 12(b)(6).**

Defendants seek to dismiss Plaintiffs' actions pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  As the legal sufficiency of the complaint is challenged under a Rule

12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the

existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern

Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King

& Spalding*, 467 U.S. 69, 73 (1984)).  A Rule 12(b)(6) motion to dismiss "should only be

granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it

appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling

him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see

also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).  Furthermore, the

"Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) of

the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim

showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz

v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the

"simplified pleading standard" of Rule 8(a)).  However, while "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy."  *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Venkatraman*, 417 F.3d at 420*; Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  The court must disregard the contrary allegations of the opposing party.  *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts."  *Eastern Shore Mkts., Inc.,* 213 F.3d at 180; *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004).

## II.      Motions for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (emphasis added).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are *material*.  *Id.* at 248.  Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The court further explained that, in considering a motion for summary judgment, a judge's function is limited to

determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. In that context, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. Similarly, the existence of a mere "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment. *Id*. at 252.

A genuine issue of material fact may exist if the evidence presented to the court is sufficient to indicate the existence of a factual dispute that could be resolved in favor of the non-moving party at trial. *Rachael-Smith v. FTDATA, Inc.,* 247 F. Supp. 2d 734, 742 (D. Md. 2003) (citing *Anderson*, 477 U.S. at 248-49). Moreover, any inferences drawn from disputed evidence must be accorded to the non-moving party. *See Matsushita,* 475 U.S. at 587-88; *E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

DISCUSSION

**I.    Plaintiffs' Causes of Action.**

Plaintiffs demand in excess of $64,000,000 in connection with the following claims:

| Count | Claim |
|-------|-------|
| I | <u>Discrimination (National Origin)</u>:  Defendants Donald C. Winter, Secretary of the Navy (the "Secretary of the Navy"), Gary M. Jebsen ("Jebsen"), James H. King ("King"), John C. Davies ("Davies), and Stephen M. Farley ("Farley") discriminated against Plaintiffs on the basis of national origin in violation of Title VII.  (A. Compl. ¶¶ 96-102; Y. Compl. ¶¶ 99-105.) |
| II | <u>Retaliation</u>:  Defendants Jebsen, King, Davies, and Farley, in conspiracy with David Caron ("Caron"), retaliated against Plaintiffs for participating in "EEO discrimination complaint activity" in violation of Title VII.  (A. Compl. ¶¶ 103-06; Y. Comp. ¶¶ 106-09.) |
| III | <u>Discrimination (Age)</u>:  Defendants discriminated against Plaintiffs on the basis of age in violation of the ADEA.  (A. Compl. ¶¶ 107-09; Y. Comp. ¶¶ 110-12.) |
| IV | <u>"Human Rights"</u>:  Defendants Jebsen, King, Davies, Farley, and Caron discriminated against Plaintiff "in violation of [their] right to equal employment opportunity as protected by the Human Rights Law, § 296, *et seq*."  (A. Compl. ¶¶ 110-13; Y. Comp. ¶¶ 113-16.) |
| V | <u>Conspiracy</u>:  Defendants conspired to discriminate against them on the basis of national origin, age, and retaliation for participating in EEO complaint activity.  (A. Compl. ¶¶ 114-18; Y. Comp. ¶¶ 117-21.) |
| VI | <u>Aiding and Abetting</u>: Each Defendant has aided and abetted the unlawful conduct alleged in Counts I-V.  (A. Compl. ¶¶ 119-23; Y. Comp. ¶¶ 122-26.) |
| VII | <u>Obstruction of Process</u>: Defendants Jebsen, King, Davies, Farley, and Caron "obstructed and impeded official processes in violation of 18 U.S.C. § 1512" in connection with the discriminatory conduct alleged in prior counts.  (A. Compl. ¶¶ 124-26; Y. Comp. ¶¶ 127-29.) |
| VIII | <u>Abuse of Administrative Power</u>: Defendants Jebsen, King, Davies, Farley, and Caron "misused and interfered with administrative processes" in connection with the discriminatory conduct alleged in prior counts.  (A. Compl. ¶¶ 127-29; Y. Comp. ¶¶ 130-32.) |
| IX | <u>Intentional Infliction of Emotional Distress</u>:  Defendants Jebsen, King, Davies, Farley, and Caron intentionally subjected Plaintiffs to emotional distress by engaging in the discriminatory conduct alleged in prior counts.  (A. Compl. ¶¶ 130-32; Y. Comp. ¶¶ 133-35.) |
| X | <u>Fraud and Misrepresentations</u>:  Defendants Jebsen, King, Davies, Farley, and Caron "used intentional misrepresentations" and engaged in fraudulent conduct in connection with the discriminatory and retaliatory conduct alleged in prior counts. (A. Compl. ¶¶ 133-41; Y. Comp. ¶¶ 136-44.) |

| Count | Claim |
|-------|-------|
| XI | <u>Malicious Abuse of Process</u>: Defendants "failed to maintain a proper system for immediate resolution of intentional discrimination" and "maliciously and intentionally abused supervisory position[s] and disciplinary process[es]" by engaging in the discriminatory conduct alleged in prior counts.  (Compl. ¶¶ 142-54; Y. Comp. ¶¶ 145-57.) |

## II.     Individual Defendants.

Defendants contend that this Court lacks jurisdiction over the individual federal employees named as defendants in these actions—*i.e.*, Jebsen, King, Davies, Farley, and Caron—and moves to dismiss these individuals with respect to Plaintiffs' Title VII claims and substitute the United States in their place with respect to Plaintiffs' tort claims.  (*See* Defs' Mem. Supp. Mot. pp. 14-15.)

Title VII does not support employment discrimination claims against individual federal employees.  *See*, *e.g.*, 42 U.S.C. § 2000e-16(c) (authorizing civil actions in which "the head of the department, agency, or unit, as appropriate, shall be the defendant"); *Newbold v. United States Postal Serv.*, 614 F.2d 46, 47 (5th Cir. 1980) (dismissing Title VII claims against individual federal employee), *cert. denied*, 449 U.S. 878 (1980).  In addition, the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA") shields individual federal employees from liability against torts where the allegedly "negligent or wrongful act or omission" occurs while the employee is "acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1). In this case, Rod J. Rosenstein, United States Attorney for the District of Maryland, has certified that Jebsen, King, Davies, Farley, and Caron were acting within the scope of their employment at the time of the alleged tortious conduct.  (*See* Defs' Mem. Supp. Mot. Ex. 9.)

Plaintiffs suggest that Jebsen, King, Davies, Farley, and Caron are properly named under

42 U.S.C. § 1983 because "they made material misrepresentations to deprive Plaintiff of constitutional rights. . . ." (*See*, *e.g.*, A. Stoyanov's Opp. pp. 3-6 & 9.)  This argument fails for two reasons.  First, Plaintiffs do not assert causes of action under § 1983 in their Complaints. Second, the allegations in Plaintiffs' Complaints are nothing more than allegations of employment discrimination.  Because Title VII and the ADEA are the exclusive remedies available to federal employees asserting employment discrimination claims based on national origin, retaliation, and age, § 1983 is not available to support their claims against individual federal employees.  *See* DISCUSSION § III, *infra* (explaining that Title VII and the ADEA are the exclusive remedies for Plaintiffs' job-related discrimination claims.).

For the reasons stated above, Jebsen, King, Davies, Farley, and Caron are DISMISSED from Plaintiffs' claims under Title VII and the ADEA (Counts I-III) for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[9]  In addition, the United States is SUBSTITUTED for Jebsen, King, Davies, Farley, and Caron with respect to Plaintiffs' tort claims (Counts V-VI & IX-XI) pursuant to 28 U.S.C. § 2679(d)(1).

## III.     Tort Claims (Counts V-VI & IX-XI).

Defendants contend that Plaintiffs' tort claims should be dismissed for two reasons. First, Defendants claim that Plaintiffs failed to satisfy the requirement that an administrative claim be filed before initiating a lawsuit under the FTCA.  *See*, *e.g.*, 28 U.S.C. § 2675(a) (mandating the filing of an administrative claim); *Henderson v. United States*, 785 F.2d 121, 123

---

[9]      *See Arbaugh v. Y & H Corp.*, ___ U.S. ___, 126 S. Ct. 1235, 1245 n.11 (2006) (characterizing a statute that limits causes of actions to specific defendants as "jurisdictional"); 42 U.S.C. § 2000e-16(c) (requiring that a federal employee's Title VII claims must be asserted against "the head of the department, agency, or unit, as appropriate. . . .").

(4th Cir. 1986) ("It is well-settled that the requirement of filing an administrative claim is

jurisdictional and may not be waived."); *Plyler v. United States*, 900 F.2d 41, 42-43 (4th Cir.

1990) (same).  Second, Defendants contend that the United States and its officers have not

waived immunity with respect to Plaintiffs' intentional torts.  *See, e.g., Federal Deposit Ins.*

*Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the

Federal Government and its agencies from suit.") (citations omitted).  In this regard, Defendants

note that the FTCA's limited waiver of sovereign immunity does not extend to "[a]ny claim

arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of

process, libel, slander, misrepresentation, deceit, or interference with contract rights . . ."  28

U.S.C. § 2680(h); *see also Tinch v. United States*, 189 F. Supp. 2d 313, 317 (D. Md. 2002)

(applying 28 U.S.C. § 2680(h) to tort of intentional infliction of emotional distress).

　　　　Plaintiffs respond to Defendants' exhaustion argument by suggesting that notice was

provided to Defendants during the underlying administrative process.[10]  Defendants neither

---

[10]　　　(*See, e.g.,* A. Stoyanov's Opp. p. 7 ("Plaintiff exposed Defendant Caron's
criminal conduct and explained in motions and letters to the EEO Commission, Navy officials,
and Office of Special Counsel (OSC) that Defendant Caron intentionally misrepresented facts,
suborned agency witnesses, and conspired with agency officials to escalate discrimination
against Plaintiff and Plaintiff's brother Dr. Yuri Stoyanov."); A. Stoyanov's Affidavit ¶ 45 ("My
brother and I reported prohibited personnel actions and fraud committed by agency officials Mr.
King, Mr. Farley, Mr. Caron and others to the Navy administration EEO Chief and Commander
Captain S. Petri, to the Commander of NAVSEA Admiral Balisle, to the Secretary of the Navy
Mr. Gordon England and to the Secretary of Defense Mr. D. Rumsfeld."); Y. Stoyanov's Opp. p.
6 ("Plaintiff and his brother reported fraud and violations of EEO laws to the agency
administration Commander of NSWCCD Captain Petri, Office of Special Counsel, and to
Captain Petri's superior Admiral Balisle."); p. 8 ("Plaintiff specifically requested [the Office of
Special Counsel] to start investigation of fraud with the transfer committed by Defendant King in
conspiracy with subordinates; P's Ex. 1, 2.") (citations omitted); Y. Stoyanov's Affidavit ¶ 51
("The instant civil action includes my claims . . . [for] fraud, conspiracy, abuse of authority
which were reported to the EEOC and also to the Office of Special Counsel since 2002 and
through the chain of command within the Navy and the Department of Defense.").)

challenge Plaintiffs' affidavit nor argue that the allegations contained in those affidavits are insufficient as a matter of law to comply with the notice requirements under the Federal Tort Claims Act. Instead, Defendants respond in general terms only. (*See*, *e.g.*, Defs' (05-1567) Reply p. 3 ("Stoyanov failed to comply with the requires [sic] of the Federal Tort Claims Act . . . in presenting his tort claims.").) As a result, this Court cannot conclude that the material jurisdictional facts are not in dispute and that Defendants are entitled to prevail as a matter of law. *Richmond v. United States*, 945 F.2d at 768. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Defendants' argument that Plaintiffs failed to satisfy the requirement that an administrative claim be filed before initiating a lawsuit under the FTCA.

Plaintiffs do not appear to respond to Defendants' argument that the United States and its officers have not waived immunity with respect to Plaintiffs' intentional torts. Specifically, Plaintiffs do not contend that Defendants somehow waived immunity with respect to the intentional torts asserted in this matter. Accordingly, Plaintiffs' intentional tort claims (Counts IX-XI) are DISMISSED for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## IV.    Title VII and ADEA—Exclusive Remedy (Counts IV-VIII).

Eight of the eleven causes of action asserted by Plaintiffs are *not* based on Title VII or the ADEA. Those causes of action are: violation of human rights laws (Count IV), conspiracy to discriminate (Count V), aiding and abetting in discriminatory conduct (Count VI), obstruction of process (Count VII), abuse of administrative power (Count VIII), intentional infliction of emotional distress (Count IX), fraud and misrepresentations (Count X), and malicious abuse of process (Count XI). Defendants maintain that these causes of action should be dismissed because each of these counts are based on allegations of employment discrimination, and

Plaintiffs' exclusive remedy for such claims is Title VII or the ADEA.

Title VII and the ADEA are the exclusive remedies available to a federal employee complaining of employment discrimination that is based on national origin, retaliation, and age. This conclusion stems from the Supreme Court's statement in *Brown v. General Services Administration* that Title VII "create[s] an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." 425 U.S. 820, 829 (1976) The approach taken in *Brown* applies to national origin and retaliation claims under Title VII, as well as age-based discrimination claims under the ADEA.. *See, e.g.*, *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996) (national origin); *White v. General Services Administration*, 652 F.2d 913, 917 (9th Cir. 1981) (retaliation); *Paterson v. Weinberger*, 644 F.2d 521, 525 (5th Cir. 1981) (age).

In this case, each cause of action that is *not* asserted under Title VII or the ADEA arises from allegations of employment discrimination based on national origin, age, or retaliation. For example, Plaintiffs' claim under the "Human Rights Law"is based on the allegation that:

> Defendant Jebsen, Defendant Mr. King, Defendant J. Davies, Defendant Farley and Defendant Caron discriminated against the Plaintiff Dr. Stoyanov on account of his national origin and/or age in violation of his right to equal employment opportunity as protected by the Human Rights Law, § 296 *et. seq*.

(A. Compl. ¶ 111; Y. Compl. ¶ 114.) Substantially similar allegations form the basis of Plaintiff's other non-Title VII and non-ADEA claims. (*See* A. Compl. ¶ 115; Y. Compl. ¶ 118 (job discrimination allegations form the basis of Plaintiffs' causes of action for conspiracy); A. Compl. ¶ 120; Y. Compl ¶ 123 (aiding and abetting); A. Compl. ¶ 125; Y. Compl. ¶ 128 (obstruction of process); A. Compl. ¶ 128; Y. Compl. ¶ 131 (abuse of administrative power); A.

Compl. ¶ 131; Y. Compl. ¶ 134 (intentional infliction of emotional distress); A Compl. ¶¶ 134-36; Y. Compl. ¶¶ 137-39 (fraud and misrepresentations); A. Compl. ¶¶ 144-53; Y. Compl. ¶¶ 146-55 (malicious abuse of process).)

For the reasons stated above, Counts IV-VIII are DISMISSED for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).[11]  The gravamen of these causes of action is allegations of job-related discrimination based on national origin, retaliation, and age, and Plaintiffs' exclusive remedy for such claims is Title VII and the ADEA.[12]

## V.      Employment Discrimination Claims.

### A.      Exhaustion of Administrative Remedies.

Defendants maintain that any employment discrimination claims based on conduct that occurred before December 21, 2001, which is 45 days prior to the date that Plaintiffs sought Equal Employment Opportunity ("EEO") counseling, should be dismissed for Plaintiffs' failure to exhaust their administrative remedies.  (*See*, *e.g.*, Defs' Mem. (05-1567) pp. 18-21.)

Title VII requires a federal employee to exhaust administrative remedies before filing a lawsuit in federal court.  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  Among these administrative requirements, the employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action,

---

[11]      The preclusive effect of Title VII and the ADEA would also extend to Counts IX-XI of Plaintiffs' Complaints if this Court had not dismissed those claims for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *See* DISCUSSION § IV, *supra*.

[12]      This Court notes that Plaintiffs' claims for obstruction of process (Count VII) is based on criminal statute 18 U.S.C. § 1512.  This statute does not give rise to a civil cause of action, which is another reason for concluding that Count VII fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

15

within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  In this case,

Plaintiffs first sought EEO counseling on February 4, 2002.[13]  Plaintiffs nevertheless raise a

number of employment discrimination claims based on conduct that occurred before December

21, 2001, which is 45 days prior to February 4, 2002.  Specifically:

- In or around 1997, A. Stoyanov was denied the position of Program Manager for the Komodo Project.  (*See* A. Compl. ¶¶ 40-41.)

- In September 1998, Plaintiffs were denied the position of Program Manager for the 6.2 applied research and development program in ship electromagnetic signature technology.  (*See* A. Compl. ¶¶ 35-39; Y. Compl. ¶ 37; *see id.* at ¶¶ 34-37.)

- In or around 1998, A. Stoyanov was denied the position of Task Leader of the LMS Project.  (*See* A. Compl. ¶¶ 42-44.)

- In April 2000, Plaintiffs were denied the position of acting Branch Head in the radio frequency technology branch.  (*See* A. Compl. ¶¶ 45-48; Y. Compl. ¶¶ 41-45 & 84.2.)

- From November 1989 to March 2001, Plaintiffs were discriminated against in connection with the allegedly fraudulent promotions of Mr. R. Renfro (whose promotion occurred on November 12, 1989), Mr. J. Grizzard (June 12, 1994), Mr. W. Nicols (October 13, 1996), Mr. K. Wilson (November 8, 1998), Mr. W. Stephens (June 18, 2000), Mr. G. Miller (March 11, 2001), and Mr. D. Vinh (March 11, 2001).  (*See* A. Compl. ¶¶ 50 & 81.1; Y. Compl. ¶¶ 47, 84.21-84.24, & 84.26-84.27.)[14]

- From approximately April 2000 to February 2001, King and Farley discriminated against Plaintiffs by interfering with their work.  (*See* A. Compl. ¶¶ 53-54; Y. Compl. ¶¶ 49-53.).)

- In "FY 2000," Davies and Farley discriminated against Y. Stoyanov by denying him "incentive pay demo points. . . ."  (Y. Compl. ¶¶ 54 & 84.19.)

---

[13]      (*See* A. Compl. ¶ 58; A. Stoyanov's Aff. ¶ 39; Defs' Mem. (05-1567) Ex. 1 p. 1.; Y. Compl. ¶ 58; Y. Stoyanov's Aff. ¶ 39; Defs' Mem. (05-1611) Ex. 1 p. 1.).)

[14]      Defendants do not appear to address Y. Stoyanov's allegation of discrimination with respect to the promotion of Mr. P. Honke.  (*See* Y. Compl. ¶ 84.25.)

- On April 26, 2001, Y. Stoyanov was discriminated against when the transcript or notes from a meeting between Plaintiff, King, and Ms. Fowler were not released to Plaintiff. (*See* Y. Compl. ¶¶ 84.4 & 84.20.)

With respect to the above claims, Plaintiffs do not contend that they contacted an EEO counselor within 45 days of the alleged discriminatory event.  Plaintiffs do, however, point out that "[t]he claims of intentional discrimination against Plaintiff[s] with regard to fraudulent promotions of Russell, Miller, Stephens, Renfro, Wilson, and Nichols were developed by reasonable investigation after filing original complaint in February 2002. . . . Plaintiff[s] timely raised these claims with the EEOC after investigation of documents requested by the OCI investigator and thus these claims are part of the current civil action, Plaintiff[s'] Affidavit."  (A. Stoyanov's Opp. pp. 33-34; Y. Stoyanov's Opp. p. 32; *see also* A. Stoyanov's Aff. ¶ 58.6; Y. Stoyanov's Aff. ¶ 61.6.)  Defendants neither challenge Plaintiffs' affidavits nor argue that the allegations contained in those affidavits are insufficient as a matter of law to comply with the 45 day requirement under 29 C.F.R. § 1614.105(a)(1).  Instead, Defendants respond in general terms only.  (*See*, *e.g.*, Defs' Reply p. 4 ("Stoyanov failed to adequately address the issue of whether portions of his claims should be barred because they were either filed untimely or not raised at the administrative level.").)[15]

The 45 day requirement under 29 C.F.R. § 1614.105(a)(1) is extended under certain

---

[15]     Certain of the claims that Defendants contend should be dismissed for failure to exhaust administrative remedies were addressed in decisions issued by Administrative Judge Norkin and the Equal Employment Opportunity Commission's Office of Federal Operations ("EEOC-OFO").  Specifically, Judge Norkin and the EEOC-OFO considered the following claims: (a) in April 2000, the agency failed to select Plaintiffs as acting branch head in the RF technology branch, code 741; (b) A. Stoyanov's claims with respect to allegedly fraudulent promotions; and (c) Y. Stoyanov's claim that one of his supervisors failed to provide him with a copy of the notes from an April 26, 2001 meeting.  (*See* A. Compl. Attach. 1, pp. 1-2 & 5-6.)

circumstances.  *See* 29 C.F.R. § 1614.105(a)(2).[16]  In the absence of additional briefing by the parties, this Court cannot conclude that—at least with respect to Plaintiffs' claims based on allegedly fraudulent promotions— "after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Migdal*, 248 F.3d at 325.  Plaintiffs have alleged certain facts that, if true, might support a claim "that [they] did not know and reasonably should not have known that the discriminatory matter or personnel action occurred."  29 C.F.R. § 1614.105(a)(2).  The government has neither responded to Plaintiffs' allegations nor explained why they are insufficient as a matter of law.  Accordingly, Defendants' Motions to Dismiss are DENIED with respect to Defendants' argument that Plaintiffs failed to satisfy the 45 day requirement under 29 C.F.R. § 1614.105(a)(1) in connection with the fraudulent promotion claims summarized above.

With respect to the remaining claims Defendant has placed at issue, Plaintiffs neither contend that they contacted an EEO counselor within 45 days of the alleged discriminatory event nor suggest a sufficient basis for tolling or waiving the 45 day requirement under 29 C.F.R. § 1614.105(a)(1).  Accordingly, with the exception of the fraudulent promotion claims discussed

---

[16]     29 C.F.R. § 1614.105(a)(2) provides:

The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

above, Plaintiffs' employment discrimination claims that are based on alleged conduct occurring

before December 21, 2001 or 45 days prior to the date that Plaintiffs sought EEO counseling are

DISMISSED for failure to exhaust administrative remedies under Fed. R. Civ. P. 12(b)(6).  *See*

*Zografov v. V.A. Medical Center*, 779 F.2d 967, 969 (4th Cir. 1985) (holding that failure to seek

EEO counseling within specified time limit "is not a jurisdictional bar for federal employees

seeking relief under Title VII. . . .").

### B.        Claims Not Raised in EEO Complaint.

Defendants assert that allegations made by Plaintiffs in their Complaints are barred

because Plaintiffs failed to include those allegations in their EEO administrative complaints.

(*See*, *e.g.*, Defs' Mem. (05-1567) pp. 21-22.)  Two of those allegations—that A. Stoyanov was

denied the positions of Program Manager for the Komodo Project in or around 1997 and Task

Leader of the LMS Project in or around 1998—are addressed above.  *See* DISCUSSION § V.A,

*supra*.  The remaining allegations provide that:

> [A]gency officials deprived [Plaintiffs] of the rights clearly
> established and well-settled in the following Federal laws: the civil
> service laws as set in 5 U.S.C. § 2302 that forbid personnel actions
> based on the prohibited personnel practices and the civil service laws
> as set in 5 U.S.C. § 2301 requiring that federal personnel
> management be implemented consistent with the merit system
> principle.

(A. Compl. ¶ 95; Y. Compl. ¶ 98.)

> In April/May 2002 Mr. Davies, acting as the department head of
> Code 74, harassed the Complainant and used deception and
> intentionally misrepresented facts to Ms. R. Johnson with regard to
> the involuntary transfer of the [Y. Stoyanov] from the Surface Ship
> Electromagnetics department Code 74 to the Submarine Acoustics
> department Code 72 as a result of discrimination in reprisal for
> participation in prior EEO activity and on the bases of age and
> national origin.

(Y. Compl. ¶ 84.17.)

Defendants note that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).  Plaintiffs do not appear to contest that the allegations summarized above were not part of their initial EEO administrative complaints.  Accordingly, Plaintiffs' discrimination claims based on 5 U.S.C. §§ 2301-2302 and Y. Stoyanov's discrimination claim based on that alleged harassment of Mr. Davies in April/May 2002 are DISMISSED for failure to exhaust administrative remedies under Fed. R. Civ. P. 12(b)(6).[17]

### C.    *McDonnell Douglas* Burden Shifting Framework.

Plaintiffs' primary support for the claim that there is direct evidence of discrimination in the record consists of an email dated March 2, 2000 from James H. King to a number of individuals, including A. Stoyanov.  (*See* Defs' Mem. (05-1567) Ex. 1 p. 414a.)  The email provides:

> Yesterday, I mentioned the need to hire younger people.  I also said that Ellie was preparing a chart which showed how our age is distributed.  That chart is attached — *please do not pass it around*. I make several observations: (1) Our average age is 44.  (2) I am

---

[17]    Plaintiffs' allegation with respect to 5 U.S.C. §§ 2301-2302, moreover, appears to be nothing more than yet another allegation of job-related discrimination based on national origin, retaliation, or age.  *Cf.* 5 U.S.C. § 2302(b)(1) (prohibiting supervisory employees from discriminating "for or against any employee or applicant for employment (A) on the basis of race, color, religion, sex, or national origin, as prohibited under [Title VII]; [or] (B) on the basis of age, as prohibited under [the ADEA].").  As this Court has already explained, Plaintiffs' exclusive remedies for the job-related discrimination claims in this matter are Title VII and the ADEA.  *See* DISCUSSION § IV, *supra*.

> above the average age.  This is distressing!  (3) Our age distribution
> is trimodal.  This reflects hiring constraints—usually externally
> imposed.  (4) There is a real paucity of employees in the 26 to 36
> year age bracket. . . . I think that we need to take the risk [to hire
> when we are just making ends meet] because we cannot stand the age
> creep, we need to keep new employees coming in to overcome the
> loss of experience, and we need the fresh ideas, skills, and
> enthusiastic energy that new employees bring.

(*Id.* (emphasis in original).)  This email, however, does not constitute direct evidence of

discrimination.  First, this email was sent well before Plaintiff first sought EEO counseling on

February 4, 2002.  *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994)

(statement made two years before disputed employment event too remote to use as direct

evidence of age discrimination) (citations omitted).  Second, the email alone "creates no

inference of age bias . . . [and] reflects no more than a fact of life and as such is merely a 'truism[

]' that carries with it no disparaging undertones."  *Id.* (quoting *Smith v. Flax*, 618 F.2d 1062,

1066 (4th Cir. 1980)).  In sum, after reviewing the material cited by Plaintiffs, this Court

concludes that Plaintiffs have not presented any direct evidence of discrimination based on age

or national origin.

In the absence of direct evidence of discrimination, Plaintiffs do not dispute that the

familiar three-step burden-shifting model of circumstantial evidence of discrimination set forth

by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) applies

to this case.  (*See* A. Stoyanov's Opp. pp. 10-50 (applying the *McDonnell Douglas* framework to

job-related discrimination claims); Y. Stoyanov's Opp. pp. 9-50 (same).)  Although this burden-

shifting framework was established in the context of Title VII, courts have applied the same

analysis to age-based discrimination claims under the ADEA.  *See*, *e.g.*, *Caussade v. Brown*, 924

F. Supp. 693, 698 (D. Md. 1996), *aff'd* 107 F.3d 865 (4th Cir. 1997) (citing *Lovelace v. Sherwin-*

21

*Williams Co.*, 681 F.2d 230, 239 (4th Cir. 1982)).  As a result, each of Plaintiff's claims for employment discrimination, including his age-based claim under the ADEA, is subject to the *McDonnell Douglas* burden-shifting scheme.

To establish a cause of action for discriminatory discharge, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802. There are specific elements that must be satisfied under both a Title VII and ADEA analysis in order for the plaintiff to meet this initial burden.  If a *prima facie* case is established, the burden then shifts to the defendant to rebut the inference.  *McDonnell Douglas*, 411 U.S. at 802.  While the defendant's burden is not onerous, it must articulate "some legitimate, nondiscriminatory reason" for the disparate treatment.  *Id*.  In this regard, the Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination" so that "when an  employer articulates a reason for [its treatment of the plaintiff] not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employment decision]."  *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298-299 (4th Cir. 1998) (internal quotations and citations omitted).

If the defendant articulates a legitimate, non-discriminatory reason for its conduct, the ultimate burden shifts to the plaintiff to show that the defendant's stated reason is "pretext." *McDonnell Douglas*, 411 U.S. at 804.  In evaluating whether the plaintiff has adduced a sufficient quantity of proof, the court may consider the relative strength of the employer's asserted nondiscriminatory reasons.  *Burns v. AAF-McQuay, Inc*., 96 F.3d 728, 732 (4th Cir. 1996).  However, unsubstantiated allegations and bald assertions will not carry the day for the

employee.  *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (naked opinions and conclusory allegations are insufficient to withstand summary judgment).  If the plaintiff cannot present facts that would permit a reasonable inference that the stated reason is a pretext for discrimination, summary judgment in favor of the defendant should be granted.  *See Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000)).

In this case, Plaintiffs assert claims for discrimination based on national origin, age, and retaliation for participating in EEO activity.  To establish a *prima facie* case of discrimination under Title VII or the ADEA, Plaintiffs must show that they: (1) are members of a protected class; (2) suffered an adverse employment action; (3) were at the time performing their job duties at a level that met their employer's legitimate expectations; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class.  *See*, *e.g.*, *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005) (Title VII); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (age).  In the context of a failure to promote claim, Plaintiffs must show that they: (1) are members of a protected class; (2) applied for the position(s) in question; (3) were qualified for each position; and (4) were rejected for each position under circumstances giving rise to an inference of unlawful discrimination.  *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir.2005).  Finally, to prove a *prima facie* case of retaliation, Plaintiffs must demonstrate that (1) they engaged in protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there was a causal connection between the activity and the challenged action.  *See Burlington N.*

*& S. F. R. Co. v. White*, 548 U.S. ___, No. 05-259, slip op. at 13 (2006); *Price v. Thompson*, 380

F.3d 209, 212 (4th Cir. 2004).

### D.       Plaintiffs' Retaliation Claims.

This Court's analysis of Plaintiffs' retaliation claims must take into account the Supreme

Court's recent decision in *Burlington N. & S. F. R. Co. v. White*, 548 U.S. ___, No. 05-259, slip

op. (2006).  In *Burlington v. White*, the Supreme Court held that a retaliation claim may proceed

if the plaintiff can show "that a reasonable employee would have found the challenged action

materially adverse, which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination."  *Id*. at 13 (citations and internal

quotation marks omitted).  In making this determination, the Supreme Court rejected the Fourth

Circuit's prior holding that a *prima facie* case of retaliation under Title VII requires showing that

the challenged employment action "result[s] in an adverse effect on the 'terms, conditions, or

benefits' of employment.'"  *Id*. at 5 (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th

Cir. 2001)).

The *Burlington v. White* decision significantly impacts this case.  Most of the

employment actions at issue in this case are challenged on the basis that they constitute

retaliation for Plaintiffs' participation in protected activity.  In addition, *Burlington v. White* was

issued *after* the briefing in this matter was complete.  As a result, Plaintiffs' retaliation claims are

understandably not analyzed in terms of whether a reasonable employee would have found the

challenged action materially adverse.  Finally, the Supreme Court emphasized that "the

significance of any given act of retaliation will often depend upon the particular circumstances"

and that, as a result, "[c]ontext matters."  *Id*. at 14.

For obvious reasons, this Court has no basis for assessing whether Plaintiffs have stated a *prima facie* case of retaliation with respect to the challenged employment actions. After considering the underlying record, this Court also concludes that Plaintiffs' retaliation claims are not susceptible to summary judgment prior to the conduct of discovery. This case will therefore proceed with respect to Plaintiffs' retaliation claims, which challenge the following employment actions:

(a) At various times, A. Stoyanov was denied directly funded work, excluded from managing projects, or not assigned positions of higher responsibility. (*See* A. Compl. ¶¶ 55-57, 61, & 65-66.)

(b) On February 21, 2002, A. Stoyanov's work schedule was changed. (*See* A. Compl. ¶ 59.)

(c) At various times, A. Stoyanov was not promoted to positions of higher responsibility. (*See* A. Compl. ¶¶ 50 & 81-81.5.)

(d) In April and September 2002, A. Stoyanov was assigned minor tasks. (*See* A. Compl. ¶¶ 84.7 & 84.11.)

(e) On May 17, 2002, A. Stoyanov's work and funding allocation was changed. (*See* A. Compl. ¶ 84.8.)

(f) In May 2002, A. Stoyanov's travel request to the IEEE symposium was denied. (*See* A. Compl. ¶ 82.)

(g) On July 29, 2002, A. Stoyanov was asked to submit daily work summaries. (*See* A. Compl. ¶ 84.9.)

(h) In September 2002, A. Stoyanov was threatened with discipline. (*See* A. Compl. ¶ 84.10.)

(i) In 2002, a new computer was not purchased for A. Stoyanov as promised.[18]

_____

[18] Although not specifically addressed in A. Stoyanov's Complaint, both parties discuss A. Stoyanov's allegation that he was retaliated against when his supervisor failed to purchase a new computer for him. (*See* A. Stoyanov's Opp. pp. 47-48; Defs' Reply (05-1567) pp. 15-16.) It is not clear from A. Stoyanov's papers whether A. Stoyanov seeks to challenge the

(j)     In September-December 2001, Y. Stoyanov's work assignment was changed. (*See* Y. Compl. ¶ 84.5.)

(k)     At various times, Y. Stoyanov's work was interfered with by his supervisors. (*See* Y. Compl. ¶¶ 50-53.)

(l)     At various times, Y. Stoyanov was denied directly funded work, excluded from managing projects, or not assigned positions of higher responsibility.  (*See* Y. Compl. ¶¶ 53, 55-57, 67-69, 84, 84.3, 84.6, 84.9, & 84.24-84.25.)

(m)     On February 21, 2002, Y. Stoyanov's work schedule was changed.  (*See* Y. Compl. ¶¶ 60 & 84.7.)

(n)     The hiring of Mr. M. Mirotznik.  Also, the provision to Mr. Mirotznik of work, direct funding, and an exception to the "core hours" rule.  (*See* Y. Compl. ¶ 84.13-16.)

(o)     In 2002, Y. Stoyanov was transferred from the RF Technology Branch to the Structural Acoustics and Target Strength Branch, funds were redirected from Y. Stoyanov  to his brother, and Y. Stoyanov was allegedly denied funding documents.  (*See* Y. Compl. ¶¶ 6, 82-83, 84.8, 84.10-84.12, & 84.18.)

Accordingly, Defendants' Motions to Dismiss are DENIED without prejudice with respect to Plaintiffs' retaliation claims under Title VII that challenge the employment actions described above.  The above employment actions are challenged by Plaintiffs on substantive grounds of discrimination based on national origin and age, as well as retaliation.  Defendants' Motions to Dismiss are DENIED with respect to all three contentions as they relate to the above employment actions.  Furthermore, with respect to these employment actions, this Court will not review matters outside of the pleadings at this stage in order to consider summary judgment. Accordingly, Defendants' alternative Motions for Summary Judgment are DENIED without

---

remedy ordered by the EEOC-OFO with respect this claim.  *Cf. Laber v. Harvey*, 438 F.3d 404, 423-24 (4th Cir. 2006) (holding that "Title VII does not authorize a federal-sector employee to bring a civil action alleging only that the [EEOC-OFO's] remedy was insufficient.  Rather, in order properly to claim entitlement to a more favorable remedial award, the employee must place the employing agency's discrimination at issue.").

prejudice.

### E.      Plaintiffs' Claims Based Solely on National Origin and Age Discrimination.

There are two particular employment actions as to which Plaintiffs claim discrimination

based solely on national origin and age.  These actions are the following:

(1)      At various times, Plaintiffs were excluded from classified information and programs.  (*See* A. Compl. ¶¶ 34 & 67; Y. Compl. ¶¶ 33 & 69.)

(2)      On February 4, 2002, Plaintiffs were not promoted to the position of branch head of RF technology branch.  (*See* A. Compl. ¶¶ 58 & 81.2; Y. Comp. ¶¶ 59 & 84.1.)

With respect to these claims, this Court is inclined to treat Defendants' motions as ones for

summary judgment as these claims merit analysis at this stage.  Although discovery has not

commenced in this matter, both parties rely extensively on the record created in the underlying

administrative proceeding.  In addition, Plaintiffs do not appear to have filed an affidavit under

Fed. R. Civ. P. 56(f) or suggested that discovery is needed to address their discrimination claims.

*See* FED. R. CIV. P. 12(b)(6) (Where "matters outside the pleading are presented to and not

excluded by the court, the motion shall be treated as one for summary judgment and disposed of

as provided in Rule 56 . . . .").[19]

---

[19]  This Court acknowledges the general principle that "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).  The nonmoving party, however, "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Apps. & Service Co.*, 80 F.3d 954, 961 (4th Cir.1996).  "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'" *Harrods Ltd.*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961).

> **(1)    At various times, Plaintiffs were Excluded from Classified
> Information and Programs.**

Plaintiffs allege that they was discriminated against on the basis of national origin and age when the Navy excluded Plaintiffs from the "largest programs in the department 74 such as Guilder Billy Goat, Guilder Babirussa and special access programs."  (A. Compl. ¶ 34; Y. Compl. ¶ 33.)  As noted above, to establish a *prima facie* case of discrimination under Title VII or the ADEA, Plaintiffs must show that they: (1) are members of a protected class; (2) suffered an adverse employment action; (3) was at the time performing their job duties at a level that met their employer's legitimate expectations; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class.  *Miles v. Dell*, 429 F.3d at 485; *Hill v. Lockheed Martin*, 354 F.3d at 285.  With respect to these claims, this Court concludes that Plaintiffs have established a *prima facie* case of discrimination.  *Cf. Ross v. Communications Satellite Corp.*, 759 F.2d 355, 357 (4th Cir. 1985) (treating reduced job "responsibilities and professional status" as potential adverse employment actions).

Defendants articulate the following legitimate, non-discriminatory reason for Plaintiffs' exclusion from the classified and special access programs: "Access to any information concerning these programs, including funding, requires a Special Clearance Adjudication and Access which Stoyanov did not possess."  (Defs' Mem. (05-1567) pp. 25-26; Defs' Mem. (05-1611) p. 23.)  Plaintiffs challenge this reason by relying on their own deposition testimony, hearing testimony, pleadings, and interpretations of documents to argue that Defendants lied, perjured, and contradicted themselves with respect to the classified status of the information and programs at issue.  (*See* A. Stoyanov's Opp. pp. 19-20 & 29-34; Y. Stoyanov's Opp. pp. 28-29.)  Such self-serving assertions, however, are insufficient to establish that a proffered legitimate,

non-discriminatory reason is pretext for discrimination.  *See Burns v. AAF-McQuay, Inc.*, 96

F.3d 728, 732 (4th Cir. 1996) (in evaluating whether plaintiff has adduced a sufficient quantity

of proof, the court may consider the relative strength of the employer's asserted

nondiscriminatory reasons); *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996)

(unsubstantiated allegations and bald assertions will not carry the day for employee); *Goldberg*

*v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (naked opinions and conclusory

allegations insufficient to withstand summary judgment).

In sum, this Court concludes that Plaintiffs have failed to demonstrate that the legitimate,

non-discriminatory reason proffered by the Navy is pretext for discrimination.  Accordingly,

Plaintiffs' allegation of exclusion from classified information and programs fails under the

*McDonnell Douglas* burden-shifting framework.[20]

### (2)     On February 4, 2002, Plaintiffs were Not Promoted to the Position of Branch Head of RF Technology Branch.

Plaintiffs allege that they were discriminated against on the basis of national origin and

age when the Navy promoted Stephen M. Farley ("Farley") instead of Plaintiffs to the position of

Branch Head of the RF Technology Branch on February 4, 2002.  (*See* A. Compl. ¶¶ 58 & 81.2;

Y. Comp. ¶¶ 59 & 84.1.)  To establish a *prima facie* case of discrimination for failure to

promote, Plaintiffs must show that they: (1) are members of a protected class; (2) applied for the

---

[20]      Assuming *arguendo* that Plaintiffs' claims satisfy the *McDonnell Douglas* framework, they would fail because this Court lacks subject matter jurisdiction to review a decision to deny a security clearance.  *See Becerra v. Dalton*, 94 F.3d 145, 148 (4th Cir. 1996) ("Security clearances are within the Executive's purview, and therefore, 'unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.'") (quoting *Department of the Navy v. Egan*, 484 U.S. 518, 530 (1988)).

position(s) in question; (3) were qualified for each position; and (4) were rejected for each

position under circumstances giving rise to an inference of unlawful discrimination.  *Anderson v.*

*Westinghouse*, 406 F.3d at 268.  After considering the papers submitted by the parties, this Court

concludes that Plaintiffs have failed to establish the fourth prong of the *prima facie* test, *i.e.*, that

Plaintiffs were rejected for the position under circumstances giving rise to an inference of

unlawful discrimination.  The Navy describes the selection process that  was used to fill the

position as follows:

> Each applicant for the position was interviewed and rated by a panel
> of six people, five of whom were experts whose combined
> backgrounds spanned the work of the Branch, and one EEO
> representative. [A. Stoyanov] was rated the second lowest by the
> panel members.  King, the selecting official, selected the top three
> scoring applicants to re-interview with him.  Stoyanov was not one
> of those who re-interviewed.  From the re-interview of these three
> applicants, King selected Farley as his choice for the Branch Head
> position.

(Defs' Mem. (05-1567) p. 26 (citations omitted); *see also* Defs' Mem. (05-1611) p. 24 (noting

that Y. Stoyanov was rated the lowest by the panel members) (citations omitted).)  Although

Plaintiffs take issue with minor aspects of the job selection process, Plaintiffs fail to challenge to

the description of the process presented by Defendants on meaningful grounds.  (*See* A.

Stoyanov's Opp. pp.14-21; Y. Stoyanov's Opp. pp. 14-20.)

Assuming *arguendo* that Plaintiffs could establish a *prima facie* case of discrimination,

their claims would still fail because Plaintiffs have failed to establish that the legitimate, non-

discriminatory reason articulated by Defendants is pretext for discrimination.  Defendants proffer

the following legitimate, non-discriminatory reason for the promotion of Farley instead of

Plaintiffs: "[James H. King ("King")], the selecting official, selected Farley because Farley had

the best 'vision' for the Branch and was the most qualified." (Defs' Mem. (05-1567) p. 27; Defs' Mem. (05-1611) p. 25.) Plaintiffs challenge the articulated reason by arguing that they were the "best-qualified candidate" for the position and that their supervisors lied and committed perjury when describing aspects of the selection process. (*See* A. Stoyanov's Opp. pp.14-21; Y. Stoyanov's Opp. pp. 14-20.) To support these claims, Plaintiffs rely on their own deposition testimony, hearing testimony, pleadings, and interpretations of documents. As already noted, however, such self-serving assertions are insufficient to establish that a proffered legitimate, non-discriminatory reason is pretext for discrimination. *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848. Plaintiffs also rely on the deposition testimony of various individuals, including King and Farley. The specific deposition testimony cited by Plaintiffs, however, does not support any reasonable inference that the Navy's proffered legitimate, non-discriminatory reason is pretext.

In sum, this Court concludes that Plaintiffs have failed to establish a *prima facie* case of discrimination, and has also failed to demonstrate that the legitimate, non-discriminatory reason proffered by the Navy is pretext. Accordingly, Plaintiffs' allegations that they were discriminated against on the basis of national origin and age when the Navy promoted Farley instead of Plaintiffs to the position of Branch Head of the RF Technology Branch on February 4, 2002 fails under the *McDonnell Douglas* burden-shifting framework.[21]

---

[21]     Although Plaintiffs do not address whether the discrimination claims addressed in this section can be proved by applying the mixed-motive framework, this Court finds that Plaintiffs have not presented sufficient evidence, direct or circumstantial, "for a reasonable jury to conclude, by a preponderance of the evidence, that [national origin or age] was a motivating factor for any employment practice." *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003); *see also EEOC v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 163 (4th Cir. 2004) (recognizing that ADEA claim may be proved under mixed-motive framework).

**VI.     Motions to Strike.**

Defendants move to strike A. Stoyanov's Rebuttal to Defendants' Reply, filed on January 5, 2006, and Y. Stoyanov's Rebuttal to Defendants' Reply, also filed on January 5, 2006, as unauthorized sur-replies.  This Court finds that the pleadings at issue are sur-replies.  Sur-reply memoranda are not permitted under the Local Rules unless otherwise ordered by the Court.  *See* Local Rule 105.2(a) (D. Md. 2004).  In this case, leave to file a sur-reply memoranda was neither requested by Plaintiffs nor ordered by this Court.  Accordingly, Defendants' Motions to Strike are GRANTED.

<u>CONCLUSION</u>

For the reasons stated above, Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment are GRANTED-IN-PART and DENIED-IN-PART, and Defendant's Motions to Strike are GRANTED.  As a result, this case will proceed with respect to a subset of Plaintiff's discrimination claims based on national origin, age, and retaliation.  Separate Orders will follow with respect to these two civil actions.


Dated: July 25, 2006                              /s/_____
                                                  Richard D. Bennett
                                                  United States District Judge