IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEKSANDR J. STOYANOV,

   Plaintiff *pro se*,

v.           Civil Action No.: RDB 05-1567

DONALD C. WINTER,
SECRETARY OF THE NAVY, *et al.,*

   Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

YURI J. STOYANOV,

   Plaintiff *pro se*,

v.           Civil Action No.: RDB 05-1611

DONALD C. WINTER,
SECRETARY OF THE NAVY, *et al.,*

   Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Currently pending before this Court are two motions: the Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment (Paper No. 87) filed by Defendant Donald C. Winter ("Defendant") and the Motion for Leave to File Rebuttal (Paper No. 101) filed by *pro se* Plaintiffs Aleksandr J. Stoyanov and Yuri J. Stoyanov ("Plaintiffs" or "Stoyanovs"). The parties' submissions have been reviewed and a hearing was conducted on August 8, 2007. For the reasons stated below, Defendant's Motion for Judgment on the Pleadings or, in the

Alternative, for Summary Judgment is GRANTED and Plaintiff's Motion for Leave to File

Rebuttal is DENIED.  As a result, this consolidated action will be CLOSED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**I.      This Consolidated Civil Action.**

The factual background and procedural history of this case are described in the

Memorandum Opinion issued by this Court on July 25, 2006, and need not be repeated here.

(*See* Paper No. 36 pp. 2-5.)  In that Opinion, this Court granted-in-part and denied-in-part

Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment.  (*Id*. at pp. 10-

32.)  Shortly thereafter, this Court consolidated Civil Action Nos. RDB-05-1567 and

RDB-05-1611, and designated Civil Action No. RDB 05-1567 the lead case for purposes of all

future filings.  (*See* Paper No. 45.)  As a result, this consolidated action proceeded on certain

employment discrimination claims based on national origin, age, and retaliation.

This Court has allowed Plaintiffs to conduct discovery with respect to their retaliation

claims in this consolidated action.  (*See* Paper No. 36 pp. 24-27.)  As a result, Plaintiffs engaged

in written discovery with Defendant and deposed three individuals: Stephen Farley, James King,

and David Caron, Esq.  (*See*, *e.g.*, Paper No. 67 p. 1 (Providing that "United States Magistrate

Judge Beth P. Gesner will be available to address disputes that arise in connection with [the

deposition of David Caron].").)  In addition, this Court allowed Plaintiffs to amend their

Complaints to include a claim based on alleged violations of the Whistleblower Protection Act.

(*See* Paper No. 66 p. 2 (Granting "Plaintiff's request to add a cause of action for "Violations of

the Whistleblower Protection Act of 1989 (Public Law 101-12).").)

**II.     The August 8, 2007 Hearing.**

As noted above, this Court conducted a hearing on August 8, 2007 with respect to the subject Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment.[1] This Court is troubled by Plaintiffs' conduct at that hearing.  Plaintiffs repeatedly accused Defendants' counsel of, *inter alia*, committing egregious acts—including conspiring with the Administrative Law Judge who presided over Plaintiffs' prior administrative action to cover up discriminatory conduct—and intentionally misrepresenting facts to this Court.[2]  This Court finds that there is absolutely no basis for such accusations.  In general, the continual *ad hominem* nature of Plaintiffs' complaints was exemplified by Plaintiffs' conduct at the hearing.  At times, Plaintiffs seemed to suggest that this Court has some bias against Plaintiffs.

**III.     Plaintiffs' Other Civil Actions.**

This Court notes that Plaintiffs have filed a total of eleven separate civil actions in this Court.  After carefully considering the number and nature of these employment discrimination cases, this Court determined that the civil actions filed by Plaintiffs are vexatious and place a burden upon this Court that is unfair to the numerous other *pro se* litigants with whom this Court

---

[1]     Plaintiffs have filed a request for leave to supplement that hearing.  (*See* Paper No. 104.)  This request reflects the same rambling allegations of corruption on the part of agency officials without any foundation.  It is consistent with the continual filings of lawsuits in this Court as noted below.  By separate Order, Plaintiffs' request for supplementation will be DENIED.

[2]     The papers submitted by Plaintiffs level similar accusations.  (*See*, *e.g.*, Paper No. 94 p. 1 ("Defendants ('Dfndts') fabricated pretext based on lies and perjuries of agency officials for the purposes of litigation.  The evidence identified below is sufficient to permit the Court to infer that Dfndts were dissembling to cover up a discriminatory purpose."); *id.* at p. 2 ("Dfndts lied and committed fraud during administrative proceedings to cover up intentional discrimination against Plntfs.").)

must share its time.  As a result, this Court entered a series of orders limiting Plaintiffs to one

active assigned civil case.  In reaching that decision, this Court explained that:

> Each of the civil actions filed by Plaintiffs involves extensive
> allegations of employment discrimination that will require
> significant motion practice.  In the consolidated action, for
> example, each complaint is approximately 35 pages in length and
> contains over 150 paragraphs.  Each complaint purports to discuss
> approximately 30 separate incidents of alleged discriminatory
> conduct.  Each incident is treated as a separate violation of, *inter
> alia*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,
> *et seq*.  At the administrative level, moreover, a significant factual
> record was created in connection with Plaintiffs' allegations of
> employment discrimination.  This record significantly increases
> the complexity of the asserted claims and any substantive motion
> practice.  In addition, these *pro se* Plaintiffs have filed a number of
> unnecessary motions in the consolidated action, including motions
> for sanctions, motions to compel defendants to certify under
> penalty of perjury the content of defendants' correspondence, and
> at least one motion to compel audiotapes made by the court
> reporter.  Finally, Plaintiffs have suggested that they will file
> additional civil actions in this Court as their numerous claims
> continue to work through the administrative process. . .

(Paper No. 12 pp. 1-2 in Civil Action No. 06-1244.)

The following chart summarizes the status of the eleven civil actions filed by Plaintiffs as

of August 14, 2007:

| Civil Action No. | Plaintiff | Status/Date Complaint Filed |
|---|---|---|
| RDB 05-1567 | A. Stoyanov | Proceeding with RDB 05-1611 as this consolidated action. Complaint filed on 6/10/05. |
| RDB 05-1611 | Y. Stoyanov | Proceeding with RDB 05-1567 as this consolidated action. Complaint filed on 6/14/05. |
| 05-2819 | A. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 10/14/05. |

4

| Civil Action No. | Plaintiff | Status/Date Complaint Filed |
|---|---|---|
| 06-1244 | Y. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 5/17/06. |
| 06-1245 | A. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 5/17/06. |
| 06-2968 | A. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 11/13/06. |
| 07-1726 | A. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 6/29/07. |
| 07-1764 | Y. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 7/06/07. |
| 07-1863 | Y. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 7/16/07. |
| 07-1953 | Y. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 7/23/07. |
| 07-1985 | Y. Stoyanov | Placed on the inactive/unassigned docket.  Complaint filed on 7/25/07. |

**STANDARD OF REVIEW**

**I.      Motion for Judgment on the Pleadings**

With respect to certain claims, Defendant moves for judgment on the pleadings under Rule12(c)of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."); *see also* 5A C. Wright & A. Miller, Federal Practice & Procedure § 1367 (West 1990) (pleadings are considered closed "upon the filing of a complaint and answer.") (citing Fed. R. Civ. P. 7(a); footnotes omitted).

The standard of review for a Rule 12(c) motion and a Rule 12(b)(6) motion is identical. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v.*

*City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint'" and not to "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)).  As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."  *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325 (4th Cir. 2001); see also *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).  Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).  However, while "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy."  *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998).

II.      **Motion for Summary Judgment.**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986), the Supreme Court explained that, in considering a motion for summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the [nonmoving party] on the evidence presented."  *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences

drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v.

Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424

F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a

reasonable fact finder could rely.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "Once the

movant has established the absence of any genuine issue of material fact, the opposing party has

an obligation to present some type of evidence to the court demonstrating the existence of an

issue of fact."  *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005)

(citing *Pine Ridge Coal Co. v. Local 8377, UMW*, 187 F.3d 415, 422 (4th Cir. 1999)).  Rule

56(e) also requires that "affidavits submitted by the party defending against a summary-

judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id*. (quoting 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## DISCUSSION

### I.      Causes Of Action At Issue.

Plaintiffs' remaining causes of action include: (A) claims of alleged violations of the Whistleblower Protection Act; (B) claims of fraudulent promotion based on conduct that occurred before Plaintiffs sought Equal Employment Opportunity ("EEO") counseling; and (C) claims based on conduct that, *inter alia*, involves allegations of retaliation for participating in protective activity.  These claims are addressed below.

### II.      Claims Based On The Whistleblower Protection Act.

As already noted, Plaintiffs' Complaints were amended to include a claim based on alleged violations of the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) (the "WPA").

(*See* Paper No. 66 p. 2 (Granting "Plaintiff's request to add a cause of action for "Violations of

the Whistleblower Protection Act of 1989 (Public Law 101-12).").)  Defendants move for

summary judgment with respect to these claims on grounds that (1) Plaintiffs failed to exhaust

their administrative remedies, and (2) this Court is jurisdictionally barred from hearing

Plaintiffs' WPA claims.

      With respect to exhaustion of administrative remedies, Defendant explains that:

> Under normal circumstances, employees who claim retaliation
> under the WPA must first report the claim to the Office of Special
> Counsel, 5 U.S.C. § 1214(a)(1)(A), and exhaust administrative
> remedies. Thereafter, employees may seek redress from the Merit
> Systems Protection Board ("MSPB"), 5 U.S.C. § 1214(a)(3), with
> an appeal, if necessary, to the Court of Appeals for the Federal
> Circuit. See 5 U.S.C. § 1221(h). Yet, in a "mixed case" asserting
> both WPA and discrimination claims, a plaintiff properly exhausts
> administrative remedies either (i) by seeking administrative relief
> with the MSPB, or (ii) by filing a complaint with the applicable
> agency EEO office, and either body may resolve claims of both
> types.  *See McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995)
> ("A mixed case may be filed as a complaint with the agency's
> EEO department or as an appeal to the MSPB, but not both.");
> *Quinn v. West*, 140 F. Supp. 2d 725, 733 (W.D. Tex. 2001); 29
> C.F.R. § 1614.302(b).  If a plaintiff picks the EEO forum to hear a
> mixed case, he "may file a civil discrimination case in federal
> court within 30 days of a final decision by the agency or after 120
> days have passed without a decision, but only if no appeal to the
> MSPB is pursued at that time."  *See McAdams v. Reno*, 64 F.3d at
> 1142; 5 U.S.C. § 7702(e)(1)(A); 29 C.F.R. § 1614.310(a).

(Paper No. 87 p. 18.)  In this case, Defendants point out that there is no evidence to suggest

either that Plaintiffs included any WPA claims in their initial EEO complaints or that Plaintiffs'

WPA claims were adjudicated at the administrative level.  Defendants also emphasize that there

is no evidence indicating that the claims that Plaintiffs actually submitted to the Office of

Special Counsel were WPA claims or the proposition that Plaintiffs exhausted their

administrative remedies after submitting such claims to the Office of Special Counsel.  Plaintiffs

do not offer a substantive response to these procedural arguments.  As a result, this Court finds

that Plaintiffs failed to exhaust their administrative remedies with respect to their WPA claims.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to

Plaintiffs' claims based on alleged violations of the Whistleblower Protection Act.[3]

## III.    Claims of Fraudulent Promotion.

This Court previously ruled that "[i]n the absence of additional briefing by the parties,

this Court cannot conclude that—at least with respect to Plaintiffs' claims *based on allegedly*

*fraudulent promotions*—after accepting all well-pleaded allegations in the plaintiff's complaint

as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim

entitling him to relief."  (Paper No. 36 p. 18 (emphasis added; internal quotation marks and

citation omitted).)  Additional briefing has been submitted with respect to Plaintiffs' claims that

the following individuals were fraudulently promoted: Richard Renfro, Wayne Nickols, Kevin

Wilson, Gary Miller, William Stephens, and Steven Russell.[4]  Defendant moves for judgment as

---

3        Defendants acknowledge that Plaintiffs submitted WPA claims to the Office of
Special Counsel in 2005.  Those claims were denied by the Office of Special Counsel and
Plaintiffs appealed to the Merit Systems Protection Board ("MSPB").  This Court cannot
consider these claims, however, because Plaintiffs elected to appeal to the MSPB instead of
submitting their claims to the EEO Office.  *McAdams*, 64 F.3d at 1141 ("A mixed case may be
filed as a complaint with the agency's EEO department or as an appeal to the MSPB, but not
both.").  Accordingly, Defendant's Motion for Judgment on the Pleadings is GRANTED with
respect to claims based on alleged violations of the Whistleblower Protection Act that Plaintiffs
submitted to the Office of Special Counsel in 2005.  *See generally Stoyanov v. Dept. of Navy*,
474 F.3d 1377 (Fed. Cir. 2007); *Stoyanov v. Merit Systems Protection Board*, Nos. 2006-3358 &
2006-3359, 2007 WL 444806 (Fed. Cir. Feb. 12, 2007) (unpublished).
4        (*See* Paper No. 36 p. 17 (Noting that Defendants did not challenge the affidavit
submitted by Plaintiffs averring that "[t]he claims of intentional discrimination against
Plaintiff[s] with regard to fraudulent promotions of Russell, Miller, Stephens, Renfro, Wilson,
and Nichols were developed by reasonable investigation after filing original complaint in

a matter of law with respect to these claims and, for reasons explained below, Defendant's motion will be GRANTED.

In the absence of direct evidence of discrimination, the familiar three-step burden-shifting model of circumstantial evidence of discrimination set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) applies to Plaintiffs' remaining discrimination claims.[5] Although this burden-shifting framework was established in the context of Title VII, this Court has applied the same analysis to age-based discrimination claims under the ADEA. *See, e.g.*, *Caussade v. Brown*, 924 F. Supp. 693, 698 (D. Md. 1996), *aff'd* 107 F.3d 865 (4th Cir. 1997) (citing *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 239 (4th Cir. 1982)). As a result, each of Plaintiffs' claims for employment discrimination, including their age-based claims under the ADEA, is subject to the *McDonnell Douglas* burden-shifting scheme.

To establish a cause of action for discriminatory discharge, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. There are specific elements that must be satisfied under both a Title VII and ADEA analysis in order for the plaintiff to meet this initial burden. If a *prima facie* case is established, the burden then shifts to the defendant to rebut the inference. *McDonnell Douglas*, 411 U.S. at 802. While the defendant's burden is not onerous, it must articulate "some legitimate, nondiscriminatory reason" for the disparate treatment. *Id*. In this regard, the Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination" so that "when an employer articulates a reason for

_____

February 2002. . . .").)

     5     (*See* Paper No. 36 pp. 20-21 (finding that Plaintiffs failed to forecast any direct evidence of discrimination based on age or national origin).)

[its treatment of the plaintiff] not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employment decision]." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298-299 (4th Cir. 1998) (internal quotations and citations omitted).

If the defendant articulates a legitimate, non-discriminatory reason for its conduct, the ultimate burden shifts to the plaintiff to show that the defendant's stated reason is "pretext." *McDonnell Douglas*, 411 U.S. at 804. In evaluating whether the plaintiff has adduced a sufficient quantity of proof, the court may consider the relative strength of the employer's asserted nondiscriminatory reasons. *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 732 (4th Cir. 1996). However, unsubstantiated allegations and bald assertions will not carry the day for the employee. *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (naked opinions and conclusory allegations are insufficient to withstand summary judgment). If the plaintiff cannot present facts that would permit a reasonable inference that the stated reason is a pretext for discrimination, summary judgment in favor of the defendant should be granted. *See Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000)).

In this case, Plaintiffs assert claims for discrimination based on national origin, age, and retaliation. To establish a *prima facie* case of discrimination under Title VII or the ADEA, Plaintiffs must show that they: (1) are members of a protected class; (2) suffered an adverse employment action; (3) were at the time performing their job duties at a level that met their employer's legitimate expectations; and (4) the position remained open or was filled by a

similarly qualified applicant outside the protected class.  *See*, *e.g.*, *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005) (Title VII); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (age).  In the context of a failure to promote claim, Plaintiffs must show that they: (1) are members of a protected class; (2) applied for the position(s) in question; (3) were qualified for each position; and (4) were rejected for each position under circumstances giving rise to an inference of unlawful discrimination.  *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir.2005).  Plaintiffs' retaliation claims are addressed in a later section of this Opinion.  *See* Discussion *infra* § IV.

### A.    Richard Renfro—Accretion of Duties Promotion.

Richard Renfro, an American who was born in 1956, was hired as a career employee by the Navy on December 3, 1984.  Renfro was promoted to an "ND-5"—which Defendant represents is the equivalent of a GS-15—*via* an "accretion of duties" promotion on or about November 12, 1989, which is approximately eight days *before* Plaintiffs began their "permanent" career positions at NSWCCD.  Renfro left NSWCCD in fiscal year 2000.

Defendant moves for summary judgment with respect to this claim on the following grounds:

- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs *applied for or requested* this accretion of duties promotion.
- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs were *qualified* to receive this accretion of duties promotion.  Under 5 C.F.R. § 300.604(a), Plaintiffs were required to be in their ND-4 positions for at least 52 weeks before they would be eligible for a promotion to an ND-5 position.
- Plaintiffs cannot establish a *prima facie* case of discrimination because, at the time of the promotion, Renfro was 32 and Plaintiffs were 34.  *See* 29 U.S.C. § 633a(a) ("All

personnel actions affecting employees or applicants for employment who are *at least 40 years of age* . . . shall be made free from any discrimination based on age.") (emphasis added).

Plaintiffs do not offer any substantial response to these arguments in their opposition papers.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to

Plaintiffs' discrimination claims involving Richard Renfro.

### B. Wayne Nickols—Accretion of Duties Promotion.

Wayne Nickols, an American who was born in 1961, began his career at NSWCCD on

December 10, 1984.  In October 1996, Nickols was promoted to an ND-5 position *via* an

accretion of duties promotion based on his assumption of additional duties and responsibilities.

Nickols left NSWCCD in fiscal year 2000.

Defendant moves for summary judgment with respect to this claim on the following

grounds:

- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs *applied for or requested* this accretion of duties promotion.
- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs were *qualified* to receive this accretion of duties promotion.  Specifically, Defendant points out there is no evidence that Nickols was not performing sufficient additional duties and responsibilities to warrant the promotion. Likewise, there is no evidence that Plaintiffs had assumed sufficient additional duties and responsibilities to warrant the promotion, or that they should have been given or requested additional duties and responsibilities.
- Plaintiffs cannot establish a *prima facie* case of discrimination because, at the time of the promotion, Nickols was 35 and Plaintiffs were 41.  Defendant contends that this six year age difference is not enough to show that Nickols was "substantially younger" than Plaintiffs.  *See Jeffers v. Thompson*, 264 F. Supp. 2d 314, 328 (D. Md. 2003) (providing that an eleven year age gap is sufficient but a five year gap is probably not); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) (absent direct evidence of age discrimination, "an age difference of six years or less between an employee and a replacement is not significant").

Plaintiffs' primary response is that the promotion of Nickols was fraudulent.  (*See*, *e.g.*, Paper No. 94 pp. 23-24.)  However, Plaintiffs support this assertion with nothing more than conclusory statements and declarations.  *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 732 (4th Cir. 1996) (in evaluating whether plaintiff has adduced a sufficient quantity of proof, the court may consider the relative strength of the employer's asserted nondiscriminatory reasons); *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (unsubstantiated allegations and bald assertions will not carry the day for employee); *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (naked opinions and conclusory allegations insufficient to withstand summary judgment).  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' discrimination claims involving Wayne Nickols.

### C.    Kevin Wilson—Accretion of Duties Promotion.

Kevin Wilson, an American who was born in 1955, began his career at NSWCCD in June 1978.  In November 1998, Wilson was promoted to an ND-5 position *via* an accretion of duties promotion based on his assumption of additional duties and responsibilities.  At the time of his promotion, Wilson had eleven years of seniority over Plaintiffs and both Wilson and Plaintiffs were 43 years old.

Defendant moves for summary judgment with respect to this claim on the following grounds:

- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs *applied for or requested* this accretion of duties promotion.
- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs were *qualified* to receive this accretion of duties promotion.  Specifically, Defendant points out there is no evidence that Wilson was not

15

performing sufficient additional duties and responsibilities to warrant the promotion. Likewise, there is no evidence that Plaintiffs had assumed sufficient additional duties and responsibilities to warrant the promotion, or that they should have been given or requested additional duties and responsibilities.

- Plaintiffs cannot establish a *prima facie* case of discrimination because, at the time of the promotion, Wilson and Plaintiffs were the same age.

Plaintiffs' primary response is that the promotion of Wilson was fraudulent. (*See*, *e.g.*, Paper No. 94 pp. 23-24.) However, Plaintiffs support this assertion with nothing more than conclusory statements and declarations. *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848. Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' discrimination claims involving Kevin Wilson.

### D.    Gary Miller—Accretion of Duties Promotion.

Gary Miller, an American who was born in 1958, began his career at NSWCCD in July 1979. In March 2001, Miller was promoted to an ND-5 position *via* an accretion of duties promotion based on his assumption of additional duties and responsibilities. At the time of his promotion, Miller was 43 years old and had approximately ten years of seniority over Plaintiffs. In contrast, Plaintiffs were 46 years old.

Defendant moves for summary judgment with respect to this claim on the following grounds:

- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs *applied for or requested* this accretion of duties promotion.
- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs were *qualified* to receive this accretion of duties promotion. Specifically, Defendant points out there is no evidence that Miller was not performing sufficient additional duties and responsibilities to warrant the promotion. Likewise, there is no evidence that Plaintiffs had assumed sufficient additional duties and

responsibilities to warrant the promotion, or that they should have been given or requested additional duties and responsibilities.

- Plaintiffs cannot establish a *prima facie* case of discrimination because, at the time of the promotion, Miller was 43 and Plaintiffs were 46.  Defendant contends that this three year age difference is not enough to show that Miller was "substantially younger" than Plaintiffs.  *See Jeffers*, 264 F. Supp. 2d at 328 (providing that an eleven year age gap is sufficient but a five year gap is probably not); *Grosjean*, 349 F.3d at 340 (absent direct evidence of age discrimination, "an age difference of six years or less between an employee and a replacement is not significant").

Plaintiffs' primary response is that the promotion of Miller was fraudulent.  (*See*, *e.g.*, Paper No. 94 pp. 26-27.)  Plaintiffs also argue that Miller's promotion was not announced and that Miller was promoted "to cover up intentional discrimination against Plaintiffs. . . ."  (*Id.* at p. 26.)  However, Plaintiffs support these assertions with nothing more than conclusory statements and declarations.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' discrimination claims involving Gary Miller.

### E.      William Stephens—Accretion of Duties Promotion.

William Stephens, an American who was born in 1959, began his career at NSWCCD in October 1989.  In June 2000, Stephens was promoted to an ND-5 position via an accretion ofduties promotion based on his assumption of additional duties and responsibilities.  Defendant emphasizes evidence in the record suggesting that Stephens' leadership and performance abilities were well recognized.  At the time of his promotion, Stephens was 41 years old and Plaintiffs were 45 years old.

Defendant moves for summary judgment with respect to this claim on the following grounds:

- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs *applied for or requested* this accretion of duties promotion.

- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs were *qualified* to receive this accretion of duties promotion.  Specifically, Defendant points out there is no evidence that Stephens was not performing sufficient additional duties and responsibilities to warrant the promotion.  Likewise, there is no evidence that Plaintiffs had assumed sufficient additional duties and responsibilities to warrant the promotion, or that they should have been given or requested additional duties and responsibilities.

- Plaintiffs cannot establish a *prima facie* case of discrimination because, at the time of the promotion, Stephens was 41 and Plaintiffs were 45.  Defendant contends that this four year age difference is not enough to show that Stephens was "substantially younger" than Plaintiffs.  *See Jeffers*, 264 F. Supp. 2d at 328 (providing that an eleven year age gap is sufficient but a five year gap is probably not); *Grosjean*, 349 F.3d at 340 (absent direct evidence of age discrimination, "an age difference of six years or less between an employee and a replacement is not significant").

Plaintiffs' primary response is that the promotion of Stephens was fraudulent.  (*See*, *e.g.*, Paper No. 94 pp. 26-27.)  Plaintiffs also argue that Stephens' promotion was not announced and that Stephens was promoted "to cover up intentional discrimination against Plaintiffs. . . ."  (*Id*. at p. 26.)  However, Plaintiffs support these assertions with nothing more than conclusory statements and declarations.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' discrimination claims involving William Stephens.

### F.    Steven Russell—Accretion of Duties Promotion.

Steven Russell, an American who was born in 1961, began his employment with the Navy on March 23, 1987.  In March 2002, Russell was promoted to an ND-5 position *via* an accretion of duties promotion based on his assumption of additional duties and responsibilities.  Defendant emphasizes evidence in the record suggesting that Russell's leadership and

performance abilities were well recognized.  At the time of his promotion, Russell was 40 years old and Plaintiffs were 46 years old.

Defendant moves for summary judgment with respect to this claim on the following grounds:

- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs *applied for or requested* this accretion of duties promotion.
- Plaintiffs cannot establish a *prima facie* case of discrimination because there is no evidence to suggest that Plaintiffs were *qualified* to receive this accretion of duties promotion.  Specifically, Defendant points out there is no evidence that Russell was not performing sufficient additional duties and responsibilities to warrant the promotion.  Likewise, there is no evidence that Plaintiffs had assumed sufficient additional duties and responsibilities to warrant the promotion, or that they should have been given or requested additional duties and responsibilities.
- Plaintiffs cannot establish a *prima facie* case of discrimination because, at the time of the promotion, Russell was 40 and Plaintiffs were 46.  Defendant contends that this six year age difference is not enough to show that Stephens was "substantially younger" than Plaintiffs.  *See Jeffers*, 264 F. Supp. 2d at 328 (providing that an eleven year age gap is sufficient but a five year gap is probably not); *Grosjean*, 349 F.3d at 340 (absent direct evidence of age discrimination, "an age difference of six years or less between an employee and a replacement is not significant").

Plaintiffs' primary response is that the promotion of Russell was fraudulent.  (*See*, *e.g.*, Paper No. 94 pp. 22-23.)  Plaintiffs also argue that they were more qualified than Russell and that individuals involved with this promotion lied.  (*Id*. at p. 22.)  However, Plaintiffs support their assertions with nothing more than conclusory statements and declarations.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' discrimination claims involving Steven Russell.

**G.     Other Promotion Claim**.

In his reply papers, Defendant moves for summary judgment with respect to Plaintiffs' claim that Paul Honke was fraudulently promoted.  Specifically:

- Plaintiffs cannot establish a *prima facie* case of discrimination with respect to the promotion of Paul Honke in August 2001 because: (1) A. Stoyanov waived this claim by raising it at the administrative level but *not* asserting it in his Complaint; (2) Y. Stoyanov failed to exhaust his administrative remedies by *not* raising this claim at the administrative level (although he did raise it in his Complaint); and (3) there is no evidence to suggest that Plaintiffs *applied for or requested* this promotion even though it was awarded through a vacancy announcement.

Plaintiffs' primary response is that the promotion of Honke was fraudulent.  (*See*, *e.g.*, Paper No. 94 p. 31.)  However, Plaintiffs support their assertion with nothing more than conclusory statements and declarations.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' discrimination claims involving Paul Honke**.**

**IV.   Retaliation Claims.**

This Court previously ruled that "Plaintiffs' retaliation claims are not susceptible to summary judgment prior to the conduct of discovery.  This case will therefore proceed with respect to Plaintiffs' retaliation claims. . . ."  (Paper No. 36 p. 25.)  Discovery has since been conducted.  Defendant has moved for judgment as a matter of law with respect to those claims and, for reasons explained below, Defendant's motion will be GRANTED.

To prove a *prima facie* case of retaliation, Plaintiffs must demonstrate that (1) they engaged in protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there was a causal connection between the activity and the challenged

action.  *See Burlington N. & S. F. R. Co. v. White*, ___ U.S. ___, ___, 126 S. Ct. 2405, 2415, No.
05-259, slip op. at 13 (2006); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).  This
standard is derived in large part from the Supreme Court's recent decision in *Burlington*.  In that
case, the Supreme Court held that a retaliation claim may proceed if the plaintiff can show "that
a reasonable employee would have found the challenged action materially adverse, which in this
context means it well might have dissuaded a reasonable worker from making or supporting a
charge of discrimination."  Burlington, 126 S. Ct. At 2415 (citations and internal quotation
marks omitted).  In making this determination, the Supreme Court rejected the Fourth Circuit's
prior holding that a *prima facie* case of retaliation under Title VII requires showing that the
challenged employment action "result[s] in an adverse effect on the 'terms, conditions, or
benefits' of employment.'" *Id.* at 2410 (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th
Cir. 2001)).

A.      **Stoyanov's Claim That He Was Denied Directly Funded Work, Excluded
        From Managing Projects, And Not Assigned Positions Of Higher
        Responsibility.**

         A. Stoyanov claims that he was denied directly funded work, excluded from
managing projects, and was not assigned to positions of higher responsibility.[6]  Defendant moves
for summary judgment with respect to claims based on these employment decisions for the
following reasons:

- A. Stoyanov cannot establish a *prima facie* case of retaliation because a reasonable
  employee would not have found Defendant's actions materially adverse and because

---

         6       Defendant represents that "[a]n employee can be funded in two ways: overhead
funding or direct funding.  Overhead funding comes out of the Division's overhead.  Direct
funding is derived from specific work funded by a Division sponsor.  Senior Engineers are
expected to develop sponsors and acquire direct funding."  (Paper No. 87 p. 32 n.8.)

there is no causal connection between A. Stoyanov's participation in the EEO process and any of the challenged actions. Specifically, Defendant contends that: (1) A. Stoyanov was *not* denied directly funded work, excluded from managing projects, and not assigned to positions of higher responsibility; (2) even if A. Stoyanov did not have directly funded work, he was placed on overhead where his salary, benefits, and job title remained the same; (3) other employees had their directly funded work cut from time to time; (4) A. Stoyanov was assigned to manage projects and positions of higher responsibility, including Head of the Komodo project (1987), acting Branch Head of Code 741 (2000), work on LID (2002), RCS Measurement Director and Tech Leader on LMS Signature Analysis (1998 to Sept. 2001); and (5) there is no evidence to suggest that the decisions at issue were affected by A. Stoyanov's participation in protected activity.

- Even if A. Stoyanov could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged actions. Specifically, Defendant contends that: (1) directly funded work was not assigned by A. Stoyanov's supervisors; (2) neither King nor Farley controlled which employees received directly funded work; and (3) A. Stoyanov's work was sometimes sub-par in terms of performance and delivering useful products and managing assigned tasks.

Plaintiffs make three main points in response: (1) other employees with inferior qualifications received better treatment and were promoted to ND-5 positions even though Plaintiffs were best qualified; (2) Plaintiffs' salary and benefits were reduced when they did not receive demo points; and (3) Navy officials lied to cover-up intentional discrimination. (*See* Paper No. 94 pp. 32-35.) With the exception of Russell and Young (which are discussed below), the promotions that Plaintiffs rely on all occurred *before* Plaintiffs' sought EEO counseling. As a result, Plaintiffs cannot ground their retaliation claims on these employment decisions. With respect to matter of demo points, this Court previously rejected—and Plaintiffs have not forecast any evidence to support—that claim. (*See* Paper No. 36 pp. 15-17.) With respect to the claim that Navy officials lied, Plaintiffs support their assertion with nothing more than conclusory statements and declarations. *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848. Accordingly, Defendant's Motion for Summary Judgment is GRANTED with

respect to A. Stoyanov's claims that he was denied directly funded work, excluded from managing projects, and was not assigned to positions of higher responsibility.

### B.      Change In Work Schedule.

Plaintiffs claim that they were discriminated against when their work schedule was changed beginning on February 21, 2002.  Specifically, the Carderock Leadership Council decided to enforce its "core hour" provisions and A. Stoyanov subsequently met with a supervisor to discuss the impact of this decision on Plaintiffs' family needs.  Defendant moves for summary judgment with respect to claims based on these employment decisions for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation because a reasonable employee would not have found Defendant's actions materially adverse and because there is no causal connection between Plaintiffs' participation in the EEO process and any of the challenged actions.  Specifically, Defendant contends that: (1) A. Stoyanov was told that he could submit a request for an exception and that his supervisor would consider a different schedule based on Plaintiffs' family needs but exception was submitted; (2) the enforcement of the "core hours" provisions applied to everyone in the Division; (3) there is no evidence that Plaintiffs were disciplined for violating the core hours provisions; and (4) there is no evidence to suggest that the decision at issue was affected by Plaintiffs' participation in protected activity.
- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendant contends that: (1) enforcement of the core hours provisions was to create consistency across division sites; and (2) there is no evidence to suggest that this action was a pretext for discrimination.

Plaintiffs' primary response is that the change in their work schedule was retaliatory and created a hostile work environment.  (*See*, *e.g.*, Paper No. 94 pp. 35-36.)  Plaintiffs also contend that the core hours provisions were not enforced in some divisions.  (*Id*. at p. 36.)  With respect to their hostile work environment allegation, this claim was not asserted during the

administrative process and, as a result, this Court lacks subject matter jurisdiction over this claim.  With respect to Plaintiffs other contentions, this Court finds that Plaintiffs have not forecast sufficient evidence to support their assertions.  Instead, Plaintiffs' rely on conclusory statements and declarations.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims that they were discriminated against when their work schedule was changed beginning on February 21, 2002.

### C.      Promotion Of Russell And Young.

In March 2002, Steven Russell was awarded an accretion of duties promotion to an ND-5 position.  *See supra* Discussion § III.F.  In May 2002, Russell was assigned to the position of Chief Scientist.  In April 2002, John Young was promoted to a temporary ND-5 position.  Defendant moves for summary judgment with respect to claims based on these employment decisions for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to Russell's promotion to the ND-5 position because there is no causal connection between Plaintiffs' participation in the EEO process and any of the challenged actions.  Specifically, Defendant emphasizes that Russell's promotion was initiated *prior* to the time that A. Stoyonav participated in protected activity.
- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to Russell's assignment to the Chief Scientist position because a reasonable employee would not have found Defendant's action materially adverse.  Specifically, Defendant contends that the Chief Scientist assignment is a staff position and there is no grade level associated with the position.  Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendant contends that Russell was performing the work and had accrued the skills for the Chief Scientist position whereas A. Stoyanov had not.
- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to Young's promotion because there is no causal connection between Plaintiffs' participation in the EEO process and any of the challenged actions.  Specifically, Defendant contends that

the position was advertised, Young was the only person who was certified, and there is no evidence that A. Stoyanov applied for the announced position. Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action. Specifically, Defendant emphasizes again that A. Stoyanov never applied for the announced position.

Plaintiffs offer a number of arguments in response to Defendant's motion. (*See*, *e.g.*, Paper No. 94 pp. 25-26.) With respect to Russell's promotion to the ND-5 position, Plaintiffs assert that the promotion was fraudulent and that management lied. (*Id*. at 15-23.) To support this assertion, however, Plaintiffs rely on conclusory statements and declarations. With respect to Russell's assignment to the Chief Scientist position, Plaintiffs argue that King lied about this action and that A. Stoyanov had superior qualifications. Again, Plaintiffs rely on conclusory statements and declarations to support these claims. With respect to Young's temporary promotion, Plaintiffs repeat their argument that the promotion was fraudulent. However, Plaintiffs rely on conclusory statements and declarations to support these claims. Ultimately, Plaintiffs fail to support their claims with credible or admissible evidence. *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848. Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims based on the promotions of Russell and Young.

### D.    Assignment Of Certain Tasks To A. Stoyanov.

In April 2002, A. Stoyanov was assigned the task of picking-up antennae from Virginia. In September 2002, A. Stoyanov was assigned to work on a test in the water channel and turbine tank tunnel. These tasks were assigned by Stephen Farley, one of A. Stoyanov's supervisors. Defendant moves for summary judgment with respect to claims based on these employment decisions for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to the assigned tasks because a reasonable employee would not have found Defendant's action materially adverse and because there is no causal connection between Plaintiffs' participation in the EEO process and the challenged actions.  Specifically, Defendant emphasizes that A. Stoyanov did not suffer any decrease in pay or a change in benefits, the tasks were only one day in duration, and the tasks did not interfere with A. Stoyanov's regular work duties.

- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  With respect to the task of picking-up antennae, Defendant contends that A. Stoyanov was on overhead and available to perform the task, no junior employees were available to perform the task, and the antennae needed to be picked up immediately.  After A. Stoyanov performed the task, Farley sent him an email to thank him. With respect to the task of working on a test in the water channel and turbine tank tunnel, Defendant contends that the task was for only one day and that Farley assigned A. Stoyanov this task in an effort to involve A. Stoyanov in different projects.  Defendant points out that Farley was frustrated in his effort to find new tasks for A. Stoyanov, who "considered it offensive unless he was leading the project or work.  The result would be that A. Stoyanov would not get involved with new or different projects and would accuse Farley of not giving him a high enough position."  (Paper No. 87 p. 38 (citations omitted).)

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to Young's promotion because there is no causal connection between Plaintiffs' participation in the EEO process and any of the challenged actions.  Specifically, Defendant contends that the position was advertised, Young was the only person who was certified, and there is no evidence that A. Stoyanov applied for the announced position.  Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendant emphasizes again that A. Stoyanov never applied for the announced position.

Plaintiffs' primary response is that Defendants are "proffer[ing] pretext based on fraud" and that management lied in connection with the tasks at issue.  (Paper No. 94 p. 37.)  To support these assertions, however, Plaintiffs' rely on conclusory statements and declarations. *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims based on the assigned tasks of picking-up antennae from Virginia and working on a test in the water channel and turbine tank tunnel.

### E.       Change To A. Stoyanov's Work And Funding Allocation.

In his Complaint, A. Stoyanov alleges that Stephen Farley ordered him to use his funding for a purpose to which he did not agree.  Specifically, Farley asked A. Stoyanov to work on the 6.1 project after Y. Stoyanov was transferred to the Structural Acoustics and Target Strength Branch.  In addition, Farley ordered A. Stoyanov to charge his labor to the segment of the project that was assigned for publications and materials.  Defendant moves for summary judgment with respect to claims based on these employment decisions for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to the change in work and funding allocation because a reasonable employee would not have found Defendant's action materially adverse and because there is no causal connection between Plaintiffs' participation in the EEO process and the challenged action.  Specifically, Defendant contends that these changes were not materially adverse to A. Stoyanov and amount to nothing more than "petty slights" or "minor annoyances."  *Burlington*, 126 S.Ct. at 2415.
- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendant contends that A. Stoyanov's supervisors wanted the 6.1 project to stay in Code 74 and that was the reason that A. Stoyanov was ordered to begin work on the project.

In response, Plaintiffs fail to explain how the challenged actions were materially adverse to A. Stoyanov.  (*See* Paper No. 94 pp. 36-40.)  In addition, Plaintiffs fail to forecast any evidence to support their claims of pretext.  (*Id*.)  Instead, Plaintiffs' rely on conclusory statements and declarations.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims based on the change in work and funding allocation experienced by A. Stoyanov.

**F.      Farley's Denial Of A. Stoyanov's Travel Request.**

In May 2002, Stephen Farley denied A. Stoyanov's travel request to an IEEE

symposium.  Defendant moves for summary judgment with respect to claims based on this

employment decision for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to the denial of this travel request because a reasonable employee would not have found Defendant's action materially adverse.  Specifically, Defendant contends that A. Stoyanov's failure to attend the IEEE symposium did not affect his work or working conditions**.**
- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendant contends that Farley denied the travel request because: (1) the project on which A. Stoyanov sought to cover his travel expenses was a limited funding task, and such funding was intended for some of A. Stoyanov's labor not travel expenses; (2) A. Stoyanov could have ordered abstracts and papers presented at the symposium that applied to his project without having to actually attend the symposium and incur the cost of travel.

Plaintiffs' primary response is that the requested travel was needed for A. Stoyanov to

complete a task that he had been assigned.  (*See*, *e.g.*, Paper No. 94 p. 42.)  However, Plaintiffs

rely on conclusory statements and declarations to support their claims.  *See Burns*, 96 F.3d at

732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for

Summary Judgment is GRANTED with respect to Plaintiffs' claims based on the denial of A.

Stoyanov's travel request to an IEEE symposium.

**G.      Farley's Request That A. Stoyanov Submit Daily Work Summaries.**

Stephen Farley requested that A. Stoyanov's submit daily work summaries.  Defendant

moves for summary judgment with respect to claims based on this employment decision for the

following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to the denial of this travel request because a reasonable employee would not have found Defendant's

action materially adverse.  Specifically, Defendant contends that all employees in A. Stoyanov's code were required to submit daily work summaries if they were working on overhead and that completing the list took only a few minutes or less each day. Defendant notes that at least one other employee—Armando Luna—had to submit a summary list of his work activities on a weekly basis.

- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendant contends that management was constantly asking why A. Stoyanov was performing overhead work and he was the only employee on 100% overhead in Farley's branch.  Moreover, Farley did not know what A. Stoyanov was working on because he kept his door shut.

Plaintiffs' primary response is that Defendant's suggested reasons are pretext and that management lied.  (*See, e.g.*, Paper No. 94 p. 43.)  However, Plaintiffs rely on conclusory statements and declarations to support their claims.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims based on Stephen Farley's request that A. Stoyanov's submit daily work summaries.

### H.    Threat Of Discipline To A. Stoyanov In September 2002.

In his Complaint, A. Stoyanov alleges that he was threatened with discipline in September 2002.  Defendant moves for summary judgment with respect to claims based on this employment decision for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to the threat of discipline because a reasonable employee would not have found Defendant's action materially adverse.  Specifically, Defendant contends that the threat of discipline was never acted upon.

- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendant contend that one of A. Stoyanov's supervisors—James King—informed him that he was to be the PI on a project and that Y. Stoyanov could provide support.  A. Stoyanov responded that Y. Stoyanov had done the prior work and that he knew nothing about it.  A. Stoyanov told his supervisors that he believed the work assignment was wrong, that he knew nothing about it, and that he consulted his brother about it and was going to appeal to

29

another supervisor.  King then advised A. Stoyanov that his refusal of King's direct instruction was insubordinate and that discipline was appropriate but that he wanted him to get to work on the project and not delay.

Plaintiffs' primary response is that Defendant's suggested reasons are pretext and that management lied.  (*See*, *e.g.*, Paper No. 94 pp. 37-38.)  However, Plaintiffs rely on conclusory statements and declarations to support their claims.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims based on A. Stoyanov allegation that he was threatened with discipline in September 2002.

## I.     Denial Of Purchase Of New Computer.

A. Stoyanov requested that Stephen Farley purchase a new computer for him when his computer expired in May 2002.  Farley offered, but did not purchase, a new computer for A. Stoyanov.  Defendant moves for summary judgment with respect to claims based on this employment decision for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to the denial of purchase of a new computer because a reasonable employee would not have found Defendant's action materially adverse and because there is no causal connection between Plaintiffs' participation in the EEO process and the challenged action.  Specifically, Defendant contends that A. Stoyanov located a used computer from another office that he could use.  In addition, Defendant contends that A. Stoyanov had project funding in May 2002 that he could have used to purchase a new computer.  Defendant also contends that Farley did not buy A. Stoyanov a new computer because A. Stoyanov called him incompetent and accused Farley of mis-managing funds, not because A. Stoyanov had filed an employment discrimination claim.

Plaintiffs' primary response is that Defendant's suggested reasons are pretext and that management lied.  (*See*, *e.g.*, Paper No. 94 pp. 40-41.)  However, Plaintiffs rely on conclusory statements and declarations to support their claims.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at

960; *Goldberg*, 836 F.2d at 848.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims based on Stephen Farley's denial of A. Stoyanov's request for a new computer.

**J.      Change In Y. Stoyanov's Work Assignment In September-December 2001.**

In his Complaint, Y. Stoyanov alleges that his work assignment was changed in September-December 2001.  (*See* Y. Stoyanov Compl. ¶ 84.5.)  Defendant moves for summary judgment with respect to claims based on this employment decision for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to the change in Y. Stoyanov's work assignment because a reasonable employee would not have found Defendant's action materially adverse.  Specifically, Defendant contends that although this meeting may have inconvenienced Y. Stoyanov, such inconveniences or annoyances are insufficient to support a claim of retaliation.  *See Burlington*, 126 S.Ct. at 2415.
- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendants contend that Y. Stoyanov was available, had clearance to enter Building 15, and other employees were similarly assigned.  (*See* Paper No. 87 p. 43 n.19.)

Plaintiffs do not offer any substantial response to these arguments in their opposition papers. Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims based on the change in Y. Stoyanov's work assignment in September-December 2001.

**K.      Y. Stoyanov's Claim That His Supervisors Interfered With His Work.**

In his Complaint, Y. Stoyanov alleges that his work was interfered with beginning in April 2000.  Specifically, Y. Stoyanov alleges that Stephen Farley "called meetings to discuss the work status but was incompetent to understand phenomenology of radar measurements at

near and far ranges." (Y. Stoyanov Compl. ¶ 50.) Defendant moves for summary judgment with

respect to claims based on this employment decision for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to the change in Y. Stoyanov's work assignment because there is no causal connection between Y. Stoyanov's participation in the EEO process and the challenged action. Specifically, Defendant points out that Y. Stoyanov did not seek EEO counseling until February 4, 2002, two months *after* the challenged action**.**
- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action. Specifically, Defendants contend that Farley was Y. Stoyanov's supervisor and Y. Stoyanov should have expected his supervisors to be kept informed as to the projects on which he worked. Defendant also points out that there is no evidence that Farley was motivated by any sort of discriminatory motive.

Plaintiffs do not offer any substantial response to these arguments in their opposition papers.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to

Plaintiffs' claims based on the change in Y. Stoyanov's work assignment in September-

December 2001.

   **L.      Y. Stoyanov's Claim That He Was Denied Directly Funded Work, Excluded
            From Managing Projects, And Not Assigned Positions Of Higher
            Responsibility.**

   Y. Stoyanov claims that he was denied directly funded work, excluded from managing

projects, and was not assigned to positions of higher responsibility.[7] Defendant moves for

summary judgment with respect to claims based on these employment decisions for the

following reasons:

---

   7      Defendant represents that "[a]n employee can be funded in two ways: overhead
funding or direct funding. Overhead funding comes out of the Division's overhead. Direct
funding is derived from specific work funded by a Division sponsor. Senior Engineers are
expected to develop sponsors and acquire direct funding." (Paper No. 87 p. 32 n.8.)

- Y. Stoyanov cannot establish a *prima facie* case of retaliation because a reasonable employee would not have found Defendant's actions materially adverse and because there is no causal connection between Y. Stoyanov's participation in the EEO process and any of the challenged actions.  Specifically, Defendant contends that: (1) Y. Stoyanov was *not* denied directly funded work, excluded from managing projects, and not assigned to positions of higher responsibility; (2) Y. Stoyanov received directly funded work in FY2001 and FY2002; and (3) Y. Stoyanov was assigned to manage projects and positions of higher responsibility, including leading the SHF Athena antenna project in 1996-1997.  In addition, Defendant notes that one of Y. Stoyanov's supervisors explained that Y. Stoyanov "would be assigned to projects with a higher level of responsibility, but if Y. Stoyanov could not be the project leader, he did not want to work on the project."  (Paper No. 87 p. 45 (citation omitted).)

- Even if Y. Stoyanov could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged actions.  Specifically, Defendant contends that: (1) directly funded work was not assigned by Y. Stoyanov's supervisors; (2) neither King nor Farley controlled which employees received directly funded work; (3) Y. Stoyanov's work was sometimes sub-par in terms of performance and delivering useful products and managing assigned tasks; and (4) Y. Stoyanov experienced difficulty getting funded work because he submitted the same proposals time and time again, and such proposals were of no interest to sponsors or did not benefit the Navy.

Plaintiffs make three main points in response: (1) other employees with inferior qualifications received better treatment and were promoted to ND-5 positions even though Plaintiffs were best qualified; (2) Plaintiffs' salary and benefits were reduced when they did not receive demo points; and (3) Navy officials lied to cover-up intentional discrimination.  (*See* Paper No. 94 pp. 32-35.)  With the exception of Russell and Young (which are discussed in Section C above), the promotions that Plaintiffs rely on all occurred *before* Plaintiffs' sought EEO counseling.  As a result, Plaintiffs cannot ground their retaliation claims on these employment decisions.  With respect to matter of demo points, this Court previously rejected—and Plaintiffs have not forecast any evidence to support—that claim. (*See* Paper No. 36 pp. 15-17.)  With respect to the claim that Navy officials lied, Plaintiffs support their assertion with nothing more than conclusory statements and declarations.  *See Burns*, 96 F.3d at

732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.   Accordingly, Defendant's Motion for

Summary Judgment is GRANTED with respect to Y. Stoyanov's claims that he was denied

directly funded work, excluded from managing projects, and was not assigned to positions of

higher responsibility.

### M.      Hiring Of Mirotznick.

In his Complaint, Y. Stoyanov alleges that the hiring of Mark Mirotznick in October

2001 was done in retaliation for Y. Stoyanov's participation in EEO activity.   (*See* Y. Stoyanov

Compl. ¶ 84(13).)   Y. Stoyanov also complains that Mirotznick was given directly funded work

and an exception to the core hours provisions.   Defendant moves for summary judgment with

respect to claims based on this employment decision for the following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation because there is no causal connection between Y. Stoyanov's participation in the EEO process and the challenged action.   Specifically, Defendant points out that Mirotznick was hired on a part-time basis in October 2001, approximately four months *before* Y. Stoyanov first engaged in protected activity.
- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.   Specifically, Defendants contend that Mirotznick was hired for his expertise in electromagnetics, his affiliation with Catholic University, and a perceived belief that his presence would make it easier to obtain funding to cover work from certain sponsors.

Plaintiffs' response simply does not forecast sufficient evidence.   (*See*, *e.g.*, Paper No. 94 pp. 32-

35.)   In addressing Mirtoznick's hiring, Plaintiffs assert a series of conclusory statements and

rely on declarations no different in kind than those that have been addressed above.   *See Burns*,

96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.   Accordingly, Defendant's

Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claims based on the

hiring of Mark Mirotznick.

**N.      Y. Stoyanov's Transfer From RF Technology Branch To The
Structural Acoustics And Target Strength.**

In his Complaint, Y. Stoyanov alleges that his transfer from the RF Technology Branch

to the Structural Acoustics and Target Strength Branch was discriminatory.  (*See* Y. Stoyanov

Compl. ¶¶ 6, 82-83, 84(8), 84(10)-(12), & 84(18).)  Y. Stoyanov also complains about the denial

of his request to be transferred back to the RF Technology Branch.  Defendant moves for

summary judgment with respect to claims based on these employment decisions for the

following reasons:

- Plaintiffs cannot establish a *prima facie* case of retaliation with respect to these transfer matters because a reasonable employee would not have found Defendant's actions materially adverse.
- Even if Plaintiffs could establish a *prima facie* case, Defendant has articulated legitimate, non-discriminatory reasons for the challenged action.  Specifically, Defendants contend that management was experiencing difficulty securing directly funded work for some of the employees in the RF Technology Branch, including Y. Stoyanov, and the Structural Acoustics and Target Strength Branch had more than adequate directly funded work.  In addition, Y. Stoyanov had been on overhead for a long time and his background was useful in the Structural Acoustics and Target Strength Branch.  Defendant also points out that *after* the transfer, $95,000 in prospective funding was redirected to A. Stoyanov in the RF Technology Branch, which meant that Y. Stoyanov's transfer resulted in Plaintiffs receiving directly funded work.  Finally, Defendant points out that Y. Stoyanov's request to transfer back was denied because Y. Stoyanov had been involved with acoustics work and was needed to complete the project.

In response, Plaintiffs argue that: (1) the reasons proffered by Defendant are pretext for

discrimination; (2) Y. Stoyanov had funding in March and April 2002; (3) management

lied about the funding; and (3) there was funding in Code 74.  (*See*, *e.g.*, Paper No. 94 pp.

38-40 & 44-48.)  Plaintiffs fail, however, to furnish sufficient evidence to support these

claims.  *See Burns*, 96 F.3d at 732; *Evans*, 80 F.3d at 960; *Goldberg*, 836 F.2d at 848.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to

Plaintiffs' claims based on the transfer of Y. Stoyanov from the RF Technology Branch and the denial of his request for a transfer back.

**VI.     Motion For Leave To File Rebuttal.**

Also pending in this action is Plaintiffs' Motion for Leave to File Rebuttal.  (*See* Paper No. 101.)  This motion is a sur-reply and, as this Court has previously explained to Plaintiffs, sur-reply memoranda are generally not permitted under the Local Rules.  *See* Local Rule 105.2(a) (D. Md. 2004).  In this case, Plaintiffs fail to articulate sufficient grounds for the proposed sur-reply.  Accordingly, Plaintiffs' Motion for Leave to File Rebuttal is DENIED.

### CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment is GRANTED and Plaintiff's Motion for Leave to File Rebuttal is DENIED.  As a result, this consolidated action will be CLOSED.  A separate Order follows.


Dated:    August 15, 2007                /s/_____
                                         Richard D. Bennett
                                         United States District Judge